133 N.J. Super. 124 (1975)
335 A.2d 587
MYRON W. KRONISCH AND SHEILA KRONISCH, INDIVIDUALLY AND ON BEHALF OF A CLASS, PLAINTIFFS,
v.
THE HOWARD SAVINGS INSTITUTION, A NEW JERSEY CORPORATION, INDIVIDUALLY AND AS REPRESENTATIVE OF A CLASS, DEFENDANT. HAROLD CHAMBERS AND VERAIAN CHAMBERS, HIS WIFE, INDIVIDUALLY AND ON BEHALF OF A CLASS, PLAINTIFFS,
v.
BERKELEY SAVINGS & LOAN ASSOCIATION OF NEW JERSEY, A NEW JERSEY CORPORATION, INDIVIDUALLY AND AS REPRESENTATIVE OF A CLASS, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided March 4, 1975.
*128 Mr. Cyrus J. Bloom for plaintiffs.
Mr. William H. Hyatt, Jr. for defendant Howard Savings Institution (Messrs. Pitney, Hardin & Kipp, attorneys).
Mr. Arthur D. Grossman for defendant Berkeley Savings & Loan Association (Messrs. Fox and Fox, attorneys).
ANTELL, J.S.C.
This is a motion for an order of maintainability as a class action under R. 4:32. In these consolidated actions plaintiffs and defendants are respectively mortgagors and mortgagees under federally insured residential *129 mortgages. Alleging a relationship sounding in express or constructive trust, plaintiffs seek an accounting for moneys earned by defendants from the investment of tax escrow funds paid by plaintiffs to defendants under their mortgages. They also ask treble damages arising from an alleged conspiracy in restraint of trade under the New Jersey Antitrust Act, N.J.S.A. 56:9-12(a). On this application they apply for designation as representatives of a class consisting of all mortgagors similarly situated in the State of New Jersey and to have defendants named representatives of a class or classes of mortgagees occupying a position similar to defendants'.
The standards governing this application are enumerated in R. 4:32-1(a). This rule provides:
(a) General Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
Subparagraph (b) (3) further provides that
An action may be maintained as a class action if the prerequisites of paragraph (a) are satsified, and in addition: * * * (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The factors pertinent to the findings include: first, the interest of members of the class in individually controlling the prosecution or defense of separate actions; second, the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; third, the difficulties likely to be encountered in the management of a class action.
Plaintiffs Kronisch are homeowner-mortgagors under a mortgage guaranteed by the United States of America pursuant *130 to the Servicemen's Readjustment Act as amended (hereinafter GI mortgage) executed and delivered to defendant, The Howard Savings Institution (Howard), on October 23, 1957. This mortgage was given to secure the repayment of a home-purchase loan in the amount of $18,000 which is expected to be liquidated sometime in the year 1982. Kronisch is an attorney-at-law and until August 31, 1973 was counsel of record for plaintiffs in both actions.
Plaintiffs Chambers are homeowner-mortgagors under a mortgage insured or guaranteed by the United States of America under the National Housing Act, as amended, and related federal legislation (hereinafter FHA mortgage) executed and delivered to defendant Berkeley Savings & Loan Association (Berkeley) on May 31, 1972. This mortgage was given to secure the repayment of a home-purchase loan in the amount of $26,700 which is expected to be fully paid sometime in the year 1997.
Under the terms of their respective mortgages plaintiffs make monthly advance payments to defendants of their municipal real estate taxes in a sum equal to 1/12 of the annual tax on their respective properties, together with their monthly mortgage payments of principal and interest. The mortgage instruments recite that defendants hold such advance tax payments "in trust" to pay the taxes as they come due, and defendants-mortgagees make the payments every three months to the appropriate tax collectors. It is admitted by Howard and Berkeley that every GI and FHA mortgage ever executed by an individual and at any time held by these defendants as mortgagees contain the "in trust" language.
As of December 31 of each year, beginning with 1967 and ending with 1972, Howard carried between 12,130 and 11,565 active GI mortgages on its books. During the same period it carried between 8,644 and 10,876 active FHA mortgages. For the year 1972 the average monthly tax escrow which Howard received from its GI mortgagors was $69.45; from its FHA mortgagors the average monthly deposit was $63.16.
*131 As of December 31 of each year, beginning with 1964 and ending with 1972, Berkeley carried between 1,224 and 985 active FHA mortgages on its books and between 1,851 and 1,302 active GI mortgages. The average monthly tax escrow which it received from its FHA mortgagors was $79.89; from its GI mortgagors it received $85.36.
Calculated at an annual rate of return of 8%, the average FHA or GI mortgagor's claim for the investment of the tax escrow deposits is roughly $12 a year. The stakes for the individual mortgagors are therefor minimal.
The bond and mortgage forms utilized by the parties in connection with the home loan transactions are obtained from the Veterans Administration and the Federal Housing Administration and for practical purposes no departures from the printed provisions ever occur. The mortgagors are not given the option of deciding whether or not they will advance tax monies. This is required as a condition of the loan.
It is obvious that the number of such FHA and GI mortgagors in the State of New Jersey may number in the hundreds of thousands since the institutional mortgagees holding such mortgages are comprised of some 20 savings banks, 300 savings and loan associations, 93 commercial banks and 120 national commercial banks, doing business in the state of New Jersey.
The issues projected in opposition to certification of the controversy as class actions will be resolved by the following conclusions in conformity with principles to be recited which are deemed to be controlling within the foregoing factual context.
The courts have been generally receptive to the class action concept. "The class action rule should be liberally construed, and such an action should be permitted unless there is a clear showing that it is inappropriate or improper." Lusky v. Capasso Bros., 118 N.J. Super. 369, 373 (App. Div. 1972), certif. den. 60 N.J. 466 (1972); Eisen v. Carlisle & Jacquelin, 391 F. 2d 555, 563 (2 Cir.1968). It has been recognized as a particularly useful device in the area of consumer *132 litigation, Kugler v. Romain, 58 N.J. 522, 535-541 (1971), and has been utilized in controversies between mortgagors and their mortgagee banks. Silverstein v. Shadow Lawn S. & L. Ass'n, 51 N.J. 30, 44 (1968). An element common to such actions is the existence of a claim too small to warrant action by the individual members of the aggrieved class.
If each victim were remitted to an individual suit, the remedy could be illusory, for the individual loss may be too small to warrant a suit or the victim too disadvantaged to seek relief. Thus the wrongs would go without redress, and there would be no deterence [sic] to further aggressions. If there is to be relief, a class action should lie unless it is clearly infeasible. [Riley v. New Rapids Carpet Center, 61 N.J. 218, 225 (1972)]
Although disputed by defendants, the proposed defendant and plaintiff classes are sufficiently defined and are so numerous that joinder of all members is impracticable. It is not necessary that the exact numbers comprising the class be specified or that the members be identified. In Lusky v. Capasso Bros., supra, the action was certified for class treatment where "approximately 7,000 potential members of the class may be involved * * *." And in Daar v. Yellow Cab Co., 67 Cal.2d 695, 63 Cal. Rptr. 724, 433 P.2d 732 (Sup. Ct. 1967), where suit was brought by a taxicab customer on behalf of a class to recover excessive charges over a four-year period, the court took pains to distinguish between establishing the existence of an ascertainable class and identifying the individual members of the class. It concluded that the fact that the members were not then identifiable "will not preclude a complete determination of the issues affecting the class." 63 Cal. Rptr. at 732, 433 P.2d at 740.
Defendants also deny that there are questions of law or fact common to the proposed classes. But the governing ideology leads us to conclude that such questions are presented. In Lusky v. Capasso Bros., supra, a number of township residents had entered into garbage collection contracts *133 with defendants under licensing agreements existing between defendants and the Village of Ridgewood. The contracts were not "negotiated," and defendants were engaged pursuant merely to the terms of the licensing agreements. The basic legal issue, as distilled by the court (at 372 of 118 N.J. Super), for each member of the class was "whether defendants are entitled to demand, collect or retain payments for services they allegedly did not perform." Noting that the claims were grounded essentially in the contractual relationships which arose from the license and individual agreements, the court concluded that
* * * there are questions of law and fact common to the class even though some variances exist in the virtually identical agreements which, among other things, designate a specific place on a particular property from which the garbage will be removed, the rate charged varying accordingly, e.g., for removal from the rear yard, from the interior of the premises, etc. [at 372].
In Silverstein v. Shadow Lawn S & L. Ass'n, supra, a class action was brought by mortgagors against the mortgagee lending institution for breach of contract in connection with the computation of interest on long-term, direct-reduction mortgage bonds. It was there held (at 44 of 51 N.J.) that the class entitled to relief extended to a "large, but presently unknown, number of defendant's mortgagors," even though, as the opinion showed, (1) the exact monetary amount involved was unknown, (2) all of the obligations for breach of which relief was being sought might not have been expressed in the same language in each individual case, (3) the class would include mortgagors who paid excessive interest from the inception of the loan, as distinguished from others whose interest rate was changed during the progress of the loan, and (4) the class would include mortgagors whose loans had already been satisfied, so that as to them relief would have to take the form of a cash refund in the amount of the accumulated interest overcharge rather than by a restatement of an existing account. The court indicated *134 (at 44) that under these circumstances treatment of the case as a "spurious" class action would be justified as involving "* * * a common question of law or fact affecting the several rights and a common relief is sought."
And in Buchanan v. Brentwood Federal S & L Ass'n, 320 A.2d 117 (Pa. Sup. Ct. 1974), a suit identical to that herein presented, in which mortgagors sought an accounting for earnings of tax escrow funds held by the mortgagees, the class action was allowed to continue. The only limitation placed upon the classes was that each be confined to those mortgagors holding bonds and mortgages having "monthly tax payment clauses that do not differ materially." (At 131).
The rationale of the foregoing authorities compels the conclusion that the classes here proposed for certification share common questions of law and fact. Concisely, the question of law is whether, having in mind the "in trust" language of the mortgage instrument, and such other facts and circumstances as may be properly developed during the trial, a fiduciary relationship has been or should be created between the proposed classes of mortgagors and mortgagees to the end that the proposed defendant class of mortgagees is accountable to the mortgagors for investment profits realized from the escrow accounts. More specifically: (1) Does the "in trust" language of the mortgage instruments require defendants to hold monthly tax payments in trust for the payment of real estate taxes? (2) Are defendants entitled to use or invest such escrow moneys? (3) Are defendants accountable to the mortgagors for commingling, investing or otherwise using such moneys? These questions rest upon "a common nucleus of operative facts," Siegel v. Chicken Delight, Inc., 271 F. Supp. 722, 726 (N.D. Cal. 1967), and notwithstanding that there may not be a complete identity of facts common to all members of the proposed classes, common questions are presented within the meaning of R. 4:32-1(a)(2).
Defendants' reasoning that the claims and defenses of the representative parties will not be typical of the claims *135 or defenses of the classes rests largely upon the expectation that each mortgage transaction and the treatment of the escrow deposits will require highly individualized attention at trial. Therefore, since, as they urge, the "in trust" language does not in itself conclusively establish a trust, explanatory evidence will be needed to elucidate the intention of the parties in each case. Variant defenses will be offered by the individual members of defendant class based upon legal and equitable considerations, and differences in the treatment of escrowed funds will be demonstrated. Justification will be offered for certain forms of treatment based upon the defaulted status of the mortgagors, and other treatments justified by considerations of waiver, laches and still others upon the doctrine of estoppel. Set-offs will be asserted by certain defendant class members against some but not others of plaintiff class. Differences, we are told, will undoubtedly be shown respecting the manner in which advance tax payments were collected and the funds treated on the books of defendant mortgagees. Moreover, it will be shown that in recent mortgage forms used by the VA and the FHA mortgagees were referred to for the first time as "trustees." From this it is propounded that claims or defenses arising out of mortgage instruments containing the "trustee" designation would not be typical of claims or defenses arising out of earlier executed mortgage instruments in which such designation is absent.
We note at the outset that it is by no means clear that the issues aforementioned will in fact crystallize at the trial. They embrace subsidiary questions touching the administration of the parole evidence rule, the statute of frauds, as well as notions of relevancy, materiality and competence which, in themselves, may develop into further questions of law common to the classes in the resolution of the main controversy. It is therefore pertinent first to observe that ordinarily "the merits of a complaint are not involved in the determination as to whether a class action may be maintained, unless of course, the allegations are patently *136 frivolous." Olive v. Graceland Sales Corp., 61 N.J. 182, 189 (1972). The allegations are not frivolous. See Buchanan v. Brentwood Federal S. & L. Ass'n, supra; Carpenter v. Suffolk Franklin Savings Bank, 291 N.E.2d 609 (Sup. Jud. Ct. Mass. 1973); Sears v. First Federal S. & L. Assn., 1 Ill. App.3d 621, 275 N.E.2d 300 (App. Ct. 1971); Note, "The Attack upon the Tax and Insurance Escrow Accounts in Mortgages," 47 Temple L.Q. 352 (1974).
In Branch v. White, 99 N.J. Super. 295 (App. Div. 1968), a class action was brought for a declaration of rights in a joint union-management pension fund administered by defendants as trustees. The cause of action arose from plaintiffs' claim that they were not told of their right to participate in the fund by the trustees, and because they therefore failed to make contributions, were denied benefits. The court addressed itself to the argument raised by defendants herein in opposition to the class action and responded in the following language:
The mere fact that in defense of the action (laches, estoppel, etc.) different factual situations may arise with respect to the defenses as to different plaintiffs does not derogate from the fact that the affirmative cause of action itself has the community of interests and of questions of law or fact which justify the class action concept. [at 310]
See also, Siegel v. Chicken Delight, Inc., supra, 271 F. Supp. at 728.
But interrelated with defendants' denial that the claims of the proposed representatives of plaintiff class are typical of claims of the class is their objection that plaintiffs are not members of the proposed classes. They argue that since the Kronisch mortgage was to Howard and the Chambers mortgage to Berkeley, and since neither plaintiff has had mortgage dealings with any other institution, neither can represent a class of mortgagors who have obtained mortgage loans from institutions other than the two named. As the defendants state their position, "unless a class action is limited *137 to parties who have dealt with each other, the claims and defenses of the representative parties cannot be typical of the claims and defenses of the class; nor can the purported representative parties fairly and adequately represent the interests of the class." They also argue, for the same reason, that plaintiffs cannot act as representatives of that class of mortgagors whose mortgages were terminated prior to the date that plaintiffs themselves executed their mortgages. Reliance for their position is placed upon a line of federal authorities which lend facial support for their position. See La Mar v. H & B Novelty & Loan Co., 489 F.2d 461, 465-468 (9 Cir.1973); Weiner v. Bank of King of Prussia, 358 F. Supp. 684, 697-701 (E.D. Pa. 1973); Kauffman v. Dreyfus Fund, 434 F.2d 727, 734 (3 Cir.1970), cert. den. 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971).
Although the New Jersey rules of practice governing the conduct of class actions coincide with the federal rules, we cannot overlook the distinction between the status of class actions in the New Jersey courts and under the federal jurisdiction. In the latter they have been plagued by the problem of "standing" arising from the federal constitutional provision restricting the judical power to actual cases and controversies. U.S. Const., Art. III, § 2; Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). As it has been stated, plaintiff "must demonstrate injury to himself caused by the party or parties whom he sues before he can be said to have successfully stated a cause of action." Haas v. Pittsburgh National Bank, 60 F.R.D. 604, 611 (W.D. Pa. 1973). But although the requirement usually prevails in the federal courts that the class representative have standing in the sense of a direct relationship with defendant against whom the class action is sought to be maintained, "[t]he New Jersey cases have historically taken a much more liberal approach on the issue of standing than have the federal cases." Crescent Pk. Tenants Ass'n v. Realty Eq. Corp. of N.Y., 58 N.J. 98, 101 (1971). *138 Although not a strict class action, the guiding standards of class membership were clearly explicated in that opinion in the following language:
Without ever becoming enmeshed in the federal complexities and technicalities, we have appropriately confined litigation to those situations where the litigant's concern with the subject matter evidenced a sufficient stake and real adverseness. In the overall we have given due weight to the interests of individual justice, along with the public interest, always bearing in mind that throughout our law we have been sweepingly rejecting procedural frustrations in favor of "just and expeditious determinations on the ultimate merits." [at 107-108]
There is little doubt here that plaintiffs' concern with the subject matter evidences "a sufficient stake and real adverseness."
But defendants argue further that the federal doctrine is not so closely and invariably linked to the issue of standing; that "when the representative plaintiff's cause of action is against a defendant unrelated to the defendants against whom the cause of action of the members of the class lies" the class action has also been barred by reason of the resulting lack of typicality, citing La Mar v. H & B Novelty & Loan Company, supra.
Federal court opinions, while entitled to respectful consideration as persuasive authority, are by no means controlling upon local questions arising in state courts. Linden Motor Freight Co., Inc. v. Travelers Ins. Co., 40 N.J. 511, 518 (1963); River Development Corp. v. Liberty Corp., 45 N.J. Super. 445 (Ch. Div. 1957), aff'd 51 N.J. Super. 447 (App. Div. 1958), aff'd 29 N.J. 239 (1959). More importantly, our study of the La Mar opinion fully satisfies us that although its announced rationale for curtailing the class action is, as stated by defendants, lack of typicality, its reasoning and the authorities relied upon (at 468 of 489 F.2d) demonstrate that the result was predominantly dictated by considerations of standing, and not typicality.
*139 Furthermore, a "liberalized federal approach to standing," Crescent Pk. Tenants Ass'n v. Realty Eq. Corp. of N.Y., supra, 58 N.J. at 105, is increasingly evident. Haas v. Pittsburgh National Bank, supra, and Samuel v. Univ. of Pittsburgh, 56 F.R.D. 435 (W.D. Pa. 1972), are significantly analogous to the case presented. In Haas plaintiff brought a class action against three banks to recover statutory damages for alleged overcharges of interest to their credit card holders. Plaintiff was the holder of credit cards issued and administered by only two of the three banks and had therefore dealt with only those two. The court denied the motion to dismiss as to the third on the ground that the defect of standing would almost certainly be cured by certifying a class of plaintiffs of which some members would have the requisite standing. In Samuel the class action was brought to obtain relief from an allegedly discriminatory Rule B(2) promulgated by the Auditor General of Pennsylvania whereunder female university students married to nonresidents were classified as nonresidents for tuition purposes. As in Haas, the court allowed the class action even as to those universities by whom plaintiff had not been aggrieved, so long as they were enforcing the rule. The rule as enforced was described as the "missing link" between plaintiff and those members of the class. In both of these cases the outcome turned on the finding of a "nexus" (in Haas, the credit cards; in Samuel, Rule B(2)) which was sufficient to unite the representative and the classes so as to defeat the lack of standing argument. Such an interpretation is equally applicable to mortgage instruments containing tax escrow provisions which do not differ materially, so that judged even by this federal criterion plaintiffs satisfy the test of standing.
It is therefore concluded, based upon the present record, that the claims and defenses of the proposed representative parties will be typical of the claims and defenses of the proposed classes of plaintiffs and defendants. It is further concluded, in light of the close identity of interests and the *140 appearance of resourceful counsel, that the representative parties will adequately protect the interests of their respective classes. E.g., Eisen v. Carlisle & Jacquelin, supra, 391 F.2d at 562.
Defendants' resistance to the order of maintainability is also fueled by considerations of manageability. These have to do with differences in defenses which may be available as between different members of the classes, the availability of set-offs, different methods of handling the escrowed funds applied by the diverse class members, difficulty in tracing funds and ascertaining the yield realized thereon, and the spectre of numerous class members entering appearances and participating on the merits. As an example of differences which may be encountered in how the funds were treated by the banks defendants cite the "capitalization system" utilized by Berkeley prior to January 1958. Under this method the unpaid principal was reduced each month by the amount allocated to principal and taxes, and when the tax deposits were disbursed the amount of the disbursement was then added to the unpaid principal balance. It has been suggested that the practical effect of this was to allow to the mortgagor the full benefit of the monies deposited. These factors have already been weighed in connection with the prerequisites of R. 4:32-1(a). Such further problems as they may provoke will be dealt with as they arise, subject always to the right of the class members to request exclusion from the class and the power of the court to alter or amend at any time the order of maintainability, to divide the classes into subclasses, to create a "fluid class" (see Eisen v. Carlisle & Jacquelin, 479 F.2d 1005, 1010 (2 Cir.1973), vacated on other grounds 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), and R. 4:32-2(c), amended November 27, 1974 to be effective April 1, 1975), and in other respects to control the course of proceedings so as to provide for the fair and efficient conduct of the action. R. 4:32-2, 3. "Even if individual questions arise during the course of litigation, *141 which render the action `unmanageable,' the court still has the power at that time to dismiss the class action and permit the plaintiff to proceed only on behalf of himself." Eisen v. Carlisle & Jacquelin, supra, 391 F.2d at 566, a caveat which has been described as "a traditional feature of the initial grant of class treatment." 3B Moore's Federal Practice, § 23.45[2] at 23-764, n. 48.
Additionally, as the Supreme Court admonished in Riley v. New Rapids Carpet Center, supra:
* * * a court should be slow to hold that a suit may not proceed as a class action. The nature of a consumer fraud case is such that a plaintiff may not be able to demonstrate at once that all the requisites are met and that no fatal problem of manageability will be encountered. [at 228 of 61 N.J.]
In weighing whether the common questions presented predominate over any questions affecting only individual members and whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy, we have considered the interest of class members in individually controlling the conduct of the litigation, the absence of pending litigation concerning the controversy by or against members of the proposed classes, and the difficulties likely to be encountered in the management of a class action. R. 4:32-1(b)(3). Having in mind the minimal financial stake of the individual members of the plaintiff class, their separate interest in conducting the suit must be regarded as altogether remote. We have also considered the advantages of having available the various participation features of the class action. We have also weighed, as we must, (Riley v. New Rapids Carpet Center, supra at 227), the fact that those not requesting exclusion will be bound by an unfavorable judgment, the stare decisis impact of an adverse determination in a conventional proceeding without any form of participation by all affected parties, and the availability of intervention possibilities in the latter as an alternative to a class action. In addition we have kept *142 sight of the cost of litigation relative to the amount in controversy and the usefulness of the class action as a vehicle by which a large class of claimants whose injuries may be small can pool their resources in order to secure judicial scrutiny of relationships allegedly fiduciary in a single proceeding and promote general observance of court-decreed standards applicable thereto. The court has also reflected on the chances of a class action altering in some manner the substantive legal relations of the parties.
While the complexities of managing the action are formidable, the nature of the judgment called for here is one of degree, and whatever hesitations we may have about venturing into an undertaking of such uncommon magnitude are dissolved by the clear imperative to allow this claim to be heard in its only possible form. The class action concept, after all, has never been counted free of difficulty. It contemplates that its saving of time, effort and expense will be at the cost of an "additional burden * * * upon the court and the parties by the necessity of also determining in the common litigation those issues which may be several." Branch v. White, supra, 99 N.J. Super. at 310. And here, where each group is manifestly "more bound together by a mutual interest in the settlement of common questions than it is divided by the individual members' interest in the matters peculiar to them," 3B Moore's Federal Practice, § 23.45[2] at 23-751, our duty is plainly revealed.
We therefore conclude that common questions predominate and that the class action is superior to any other available method for the fair and efficient adjudication of the controversy. The order of maintainability will be granted, allowing the action to proceed on behalf of both plaintiffs individually and as representatives of a class of all mortgagors of residential property in the State of New Jersey under federally insured G.I. and F.H.A. mortgages containing language reciting that real estate tax payments advanced by the mortgagors are to be held "in trust" by the mortgagees, against The Howard and Berkeley, individually and as representatives *143 of a class consisting of approximately 20 mutual savings banks, 300 savings and loan associations and 213 commercial banks, and other financial lending institutions in the State of New Jersey by which such mortgages are now or were ever held as mortgagees.
With respect to the cause of action grounded in conspiracy under the New Jersey Antitrust Act, certification will be granted to plaintiffs, but only as representatives of mortgagors under such mortgages now or ever held by Howard and Berkeley. As to them, there is the requisite adverseness necessary for standing. Class action certification will be denied, however, as to the proposed defendant class of mortgagees. Unlike the accounting action, it cannot be said that this theory of recovery presents questions of law or fact common to defendant class, that the defenses of the proposed representatives will typify those of the class, that the proposed representatives will fairly and adequately represent the interests of the class, or that the class action is superior to other available methods of adjudicating that controversy. The participation of the various mortgagees in a conspiracy can be proved only by individuated evidence. Within this particular setting the mere fact that each mortgagee followed the same practice with respect to the escrowed tax monies would not, without more, constitute such concert of action from which it could be inferred that the practices themselves were the product of an unlawful combination by all. The case differs from others in which a class of alleged conspirators was certified but where the members belonged to a trade association or other organization which served to advance and coordinate the plot. See Management Television Systems, Inc. v. National Football League, 52 F.R.D. 162 (E.D. Pa. 1971); Research Corp. v. Pfister Associated Growers, Inc., 301 F. Supp. 497 (N.D. Ill. 1969); Forbes v. Greater Minneapolis Area Board of Realtors, 61 F.R.D. 416 (D. Minn. 1973). Proof of individual participation in the conspiracy would therefore have to be supplied in the form of independent evidence as to each class member. The cause of action depends *144 upon several decisions of the class members to join the unlawful agreement, and proof that the representative members acted in combination is not evidence that the absentees were guilty of the same conduct. In addition, individual defenses would have to be heard in response to the principal charge of conspiratorial conduct itself, unlike Branch v. White, supra, or as in the claim for an accounting herein, where the principal cause of action based on trust relationship could be resolved on common questions and individual defenses as to the several plaintiffs deferred. By so splintering the action into hundreds of separate trials the historic justification of the common question class suit of achieving "economies of time, effort, and expense," 3B Moore's Federal Practice, § 23.45[2] at 23-811, would be defeated and the trial left unmanageable. Riley v. New Rapids Carpet Center, supra, 61 N.J. at 227.
As a final observation, it is noted that the New Jersey Antitrust Act, under which relief is requested, contemplates joint and several liability. The accumulated damages, trebled pursuant to statute, recoverable by the entire class of mortgagors from the entire class of mortgagees, may aggregate many millions of dollars. Yet, if the class recovery were allowed, each member of defendant class, no matter how minor its participation in the scheme, would be individually answerable for the full amount of the judgment. We conclude that such a result would constitute a major alteration in the substantive legal relations between the parties and goes beyond the intent of class action policy. See 3B Moore's Federal Practice, § 23.45[3] at 23-806.