139 N.J. Super. 239 (1976)
353 A.2d 158
NORMA E. GALLANO, GERALD GALLANO, PATRICIA RYAN, JOHN RYAN, JOHN TOBIN, MARGARET TOBIN, JANE E. GOVIA, DONALD GOVIA, CATHERINE CONKLIN, ALFRED VAY, LOUIS USATI, CHARLES USATI, ALBINA CERRUTI, LOUIS CERRUTI, FRAN FRATTINI, VANCE W. DUKHUIS, JANET COPOZZI, ROSE MARIE MEYER, DOROTHY HOYT, NORMAN C. HOYT, ALMA HEINZELMANN, ETHEL M. PLENKERS AND HARRY R. PLENKERS, PLAINTIFFS,
v.
JOHN M. RUNNING AND RINGWOOD BOROUGH SEWERAGE AUTHORITY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided February 3, 1976.
*242 Mr. Terence P. Corcoran for plaintiffs (Messrs. Corrado, Corcoran & Sokalski, attorneys).
*243 Mr. Richard W. Macaluso for defendant, John M. Running (Alfred A. Porro, Jr., attorney).
Mr. John J. Jamison for defendant, Ringwood Borough Sewerage Authority.
JOHNSON, J.S.C.
This court must determine whether the instant suit may proceed as a class action under R. 4:32.
On June 12, 1975 the 23 named plaintiffs, all owners of realty in the Borough of Ringwood in the area to be serviced and billed by the Ringwood Borough Sewerage Authority (Authority), filed suit against the Authority and its counsel, John M. Running. Counts 1 and 2 of the complaint allege that the Authority improperly paid Running $25,070 for legal services performed in connection with the issuance of revenue bonds of the Authority, in contravention of N.J.S.A. 40A:2-38.1 and equitable principles of reasonable compensation. Plaintiffs pray that the $25,070 fee paid be determined to be excessive and seek an order that it, or a portion thereof, be refunded to the treasurer of the Ringwood Borough Sewerage Authority.
In count 3 plaintiffs complain that payments of an additional fee of $10,500 by the Authority to Running for preparation of 42 utility easements were based upon an illegal retainer agreement and were excessive. Plaintiffs seek an order amending the retainer agreement and requiring Running to return to the treasurer of the Ringwood Borough Sewerage Authority any sums received that the court finds excessive.
Because plaintiffs have brought this action "for themselves and for all others similarly situated, their number being large and it being impracticable to bring all of them before this Court," a hearing was held on December 9, 1975 on the court's own motion to determine whether an order under R. 4:32-2(a) should issue allowing this suit to proceed as an R. 4:32-1 class action.
*244 In the interest of clarity this opinion is bifurcated into an examination of (1) whether an order of maintainability under R. 4:32-2(a) should issue, and (2) whether any orders under R. 4:32-3 should issue.

I
The judicial economy inherent in the efficient resolution of multiple party disputes is the cornerstone of the class action suit. Wright & Miller, Federal Practice and Procedure: Civil § 1754 at 543. Federal Rule of Civil Procedure 23, as amended in 1966, the counterpart of R. 4:32, has been described as "the wave of the future" which will accelerate the resolution of multiple party disputes that have been spawned by the "increasing complexity and urbanization of modern American society." Wright & Miller, op. cit., Civil § 1751 at 510-511.
This "wave" has landed upon New Jersey's shores to the plaudits of our judiciary. In the absence of a "clear showing" that a class suit is improper, this court must certify the instant action as a class suit in accordance with the liberal construction that must be afforded the rule. See Pressler, Current N.J. Court Rules, comment to R. 4:32; Lusky v. Capasso Bros., 118 N.J. Super. 369, 373 (App. Div. 1972), certif. den. 60 N.J. 466 (1972); Riley v. New Rapids Carpet Center, 61 N.J. 218, 228 (1972); Kronisch v. Howard Savings Inst., 133 N.J. Super. 124, 131 (Ch. Div. 1975). Indeed, the amendments to R. 4:32-2(b) and (c), effective April 1, 1975, evidence a clear desire by our Supreme Court that certain hurdles which have impeded federal class actions be removed in this state. See Pressler, op. cit., comment to R. 4:32.
In order for this suit to proceed as a class action all of the requirements of R. 4:32-1(a) must be met in addition to at least one provision of R. 4:32-1(b). R. 4:32-1(a) provides:
*245 General Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
At the December 9, 1975 hearing it was represented that there are at least 3,000 property owners encompassed by the putative class. Joinder of all members is certainly impracticable. This court makes no effort to determine the exact number of members nor their identity, since such an exercise goes well beyond the court's duties so long as the class itself is well defined. Kronisch v. Howard Savings Inst., supra, 133 N.J. Super. at 132.
The factual framework of plaintiff's suit eliminates the need for a separate analysis of R. 4:32-1(a)(2) and (3). See 3B Moore's Federal Practice, par. 23.06-1 at XX-XXX-XXX. In Lusky v. Capasso Bros., supra, plaintiffs, as residents of the Village of Ridgewood, sued the defendants who had entered into a license agreement with the village. The agreement granted defendants a three-year exclusive right to remove garbage in the village. Plaintiffs complained of breaches by defendants of both the licensing agreement and individual agreements with the class members in that defendants wrongfully discontinued certain services and used coercive measures to receive payment for services not rendered. The court found
* * * there are questions of law and fact common to the class even though some variances exist in the virtually identical agreements which, among other things, designate a specific place on a particular property from which the garbage will be removed, the rate charged varying accordingly, e.g., for removal from the rear yard, from the interior of the premises, etc. [118 N.J. Super. at 372]
Plaintiffs in the instant suit present a homogeneous cause of action. Although complete identity of facts common *246 to all members is not necessary to satisfy the requirements (Lusky v. Capasso Bros., supra; Kronisch v. Howard Savings Inst., supra, 133 N.J. Super. at 134), complete identity is present since all plaintiffs complain of the same acts and seek no personal damages. See also Booth v. General Dynamics Corp., 264 F. Supp. 465 (N.D. Ill. 1967), where the requirements of Fed. R. Civ. P. 23 were met in a taxpayer suit seeking restraint of the allegedly illegal disposition of public property within the taxpayer's sanitary district.
A satisfaction of R. 4:32-1(a)(4) depends on the facts of each case. Wright & Miller, op. cit., Civil § 1765 at 622. Paragraph 23.07(2) of 3B Moore's Federal Practice illuminates the requirements of (a) (4):
As a general rule, the interest of the named representative(s) plaintiff or defendant, must be coextensive with the interest of the other members of the class. The court must also be assured that the representatives will vigorously prosecute or defend that interest, and this will usually require the assistance of responsible and able counsel. [at 23-371]
Coextensive interests exist when "the representatives and the class members * * * share common objectives and legal or factual positions"; when there are no "antagonistic" interests between the representative and the class. Wright & Miller, op. cit., Civil § 1769 at 654-655. It is clear that plaintiffs in this suit share "coextensive interests" with the absent class members.
The fact that plaintiffs have thus far enthusiastically pursued this suit indicates that the continued prosecution will be vigorous and energetic. The court is satisfied that plaintiffs' counsel possesses the skill and integrity necessary to insure competent advocacy of the class's position. It is indeed tempting to couch findings as to counsel's competence in conclusionary terms. See Kronisch v. Howard Savings Inst., supra, 133 N.J. Super. at 139-140; Tober v. Charnita, Inc., 58 F.R.D. 74, 81 (M.D. Pa. 1973). However, in a *247 suit such as this, where citizens are actively seeking to protect the public interest, the satisfaction and confidence of those citizens should take precedence over the satisfaction of the court. Therefore, this court will offer the class members the opportunity to voice dissatisfaction with counsel before the trial on the merits. The court will elaborate on this point in Part II of this opinion.
At the December 9 hearing Running's attorney indicated that there should be more than 23 named plaintiffs representing the class. It is the quality and not the quantity of the representation that is important. Wright & Miller, op. cit., Civil § 1766. Reliance upon a certain ratio of named representatives to the class as a whole, as insurance of adequate representation, is "unwarranted." Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2 Cir.1968).
This court is satisfied that as the parties are presently constituted, all of the requirements of R. 4:32-1(a) have been met.
R. 4:32-1(b) provides in part:
Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of paragraph (a) are satisfied, and in addition:
(1) the prosecution of separate actions by or against individual members of the class would create a risk either of (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. * * *
Although this court has been unable to find any reported decisions from this jurisdiction certifying a class action under (b)(1), that provision's utility in the present suit is undeniable.
In order for subsection (b)(1)(A) to apply, the court must find that there is "a risk that separate actions will in fact be brought if a class action is not permitted." *248 Wright & Miller, op. cit., Civil § 1773 at 8. A threat of multiple litigation in this suit, although not an absolute certainty, is a very real possibility.
Could separate suits establish incompatible standards of conduct? An affirmative answer is warranted. In La Mar v. H & B Novelty & Loan Co., 489 F.2d 461 (9 Cir.1973), Circuit Judge Sneed stated (at 466) that the danger against which (b) (1) (A) protects "exists in those situations in which the defendant by reason of legal relations involved cannot as a practical matter pursue two different courses of conduct." In a taxpayer suit against a defendant corporation which allegedly received valuable leases of sanitary district land at inadequate rentals pursuant to a fraudulent conspiracy, the court found that the criteria of (b) (1) (A) were met. Booth v. General Dynamics Corp., supra at 472.
In Zachary v. Chase Manhattan Bank, 52 F.R.D. 532 (S.D.N.Y. 1971), plaintiff filed suit on behalf of all persons holding "Uni-Cards" with defendant, claiming that the finance charge exacted was usurious. The court held that
* * * prosecution of separate actions by individual members of the class could lead to inconsistent results with respect to other members of the class (Rule 23(b) (1) (A)) since the finance charge exacted by defendant is either legal or it is illegal as to all members. [at 534]
The Zachary interpretation of subsection (b) (1) (A) was critiziced in Goldman v. First Nat'l Bk. of Chicago, 56 F.R.D. 587, 590 (N.D. Ill. 1972), where the court stated that "in order for there to be a risk of varying adjudications, there must be different parties attempting to impose different standards upon an individual." District Judge Bauer felt that these "diverse parties" should be gathered in a (b) (1) (A) class suit. The Goldman rationale perplexes this court, for to apply it to its logical extreme would preclude the possibility of there ever being a (b) (1) (A) suit. If, under R. 4:32-1(a) (4), it is "axiomatic that a putative representative cannot adequately protect the class if his interests *249 are antagonistic to or in conflict with the objectives of those he purports to represent," (Wright & Miller, op. cit., Civil § 1768 at 638-639), the consolidation of antagonistic parties into a single class in a (b) (1) (A) would prevent certification for failure to meet prerequisite (a) (4). The proper procedure, in a suit where members of a putative class may desire varying outcomes, is to certify the class action under (b) (3) rather than (b) (1), since disgruntled members are given the opportunity to "opt" out and not be bound by a judgment. See Olive v. Graceland Sales Corp., 61 N.J. 182, 189-190 (1972).
The Zachary rather than the Goldman approach to (b) (1) (A) was employed by the United States District Court in Robertson v. Nat'l Basketball Ass'n, 389 F. Supp. 867 (S.D.N.Y. 1975), an antitrust action brought on behalf of present and former basketball players against a professional basketball league. The court in Robertson found that
* * * separate actions could establish incompatible standards of conduct for the NBA is well within the realm of possibility. For example, if this action were allowed to continue only for the benefit of the named plaintiffs, it is conceivable that other members of the proposed class would file similar complaints in other courts. [At 901; emphasis supplied]
Where there is a "total absence of individual issues," certification under (b) (1) (A) is proper. Tober v. Charnita, Inc., supra at 81. Certification under (b) (1) (A) will lie in the instant suit since the actions of Running and the Authority which are clearly either legal or illegal, involve no issues unique to any member of the class. To deny certification under (b) (1) (A) could well open a "Pandora's box" of multiple litigation, the very result that R. 4:32 is designed to prevent.
Running's attorney contends that this action could also be certified under (b) (3). This may well be true, since "virtually every class action that meets the requirements of 23(b) (1) or 23(b) (2) will also meet the less severe requirements of 23(b) (3)." Van Gemert v. Boeing Co., 259 F. *250 Supp. 125, 130 (S.D.N.Y. 1966). However, when (b) (1) and (b) (3) are applicable, the court should certify the suit under (b) (1) "rather than under (b) (3), so that the judgment will have a res judicata effect as to all the class (with no member having the right to opt out), and not defeat the policy underlying the (b) (1) and (b) (2) class suits." 3B Moore's Federal Practice, par. 23.31(3) at 23-527. See also Van Gemert v. Boeing Co., supra at 130-131; Tober v. Charnita, Inc., supra at 79; Zachary v. Chase Manhattan Bank, supra at 534; Wright & Miller, op. cit., Civil § 1772 at 7; Robertson v. Nat'l Basketball Ass'n., supra at 903.

II
R. 4:32-3 provides in pertinent part:
In the conduct of actions to which this rule applies, the court may make appropriate orders: * * * (b) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action. * * *
Although it is not mandatory for a court to order notification in a (b) (1) action, giving some type of notice to absentee class members of the pendency of the action and the effects of a judgment is "the best practice in most cases." Wright & Miller, supra, Civil § 1793 at 205. Notice not only protects the absentee class members but also protects defendants, since if plaintiffs lose on the merits, absent members will be precluded from complaining that their interests were inadequately represented. Pasquier v. Tarr, 318 F. Supp. 1350, 1354 (D.C. La. 1970), aff'd per curiam 444 F.2d 116 (5 Cir.1971).
Therefore, this court will afford the absent class members the opportunity to intervene in this action as named parties, and to voice dissatisfaction with plaintiffs' attorney's representation. *251 Community involvement in suits of this character should be encouraged and not thwarted by the courts. When the public is offered a meaningful say in their affairs, confidence in judicial process will be enhanced.
Counsel for the parties are ordered to submit to this court proposed forms of notice consistent with this opinion, and recommendations as to the medium in which said notice shall appear. Since this court has already indicated that this suit may proceed as a class action, the failure of absent members to intervene or voice dissatisfaction with the adequacy of representation will in no way affect the continuation of this action. See Wright & Miller, op. cit., Civil § 1768 at 659.
In granting certification under R. 4:32 this court offers no opinion as to the merits of the suit. See Olive v. Graceland Sales Corp., supra, 61 N.J. at 189.