252 N.J. Super. 188 (1991)
599 A.2d 582
MARCELINO SALDANA AND JUANA SALDANA; OLIO ROWEN; NOEMI SANTANA; JUAN ROSADO AND EDITH ROSADO; GEORGE BROWN AND HELEN BROWN; AND TEODOSIA LOPEZ; RODOLFO ROBLEDO AND IDA ROBLEDO, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS-RESPONDENTS,
v.
THE CITY OF CAMDEN; LEONARD J. DIMEDIO, BUILDING INSPECTOR OF THE CITY OF CAMDEN; WALTER RICHARDSON, DIRECTOR OF PUBLIC WORKS OF THE CITY OF CAMDEN, DEFENDANTS-APPELLANTS, AND JOHN/JANE DOES 1 THROUGH 10, FICTITIOUS NAMES, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 1, 1991.
Decided December 2, 1991.
*190 Before Judges MICHELS, HAVEY and CONLEY.
Dennis G. Kille, Acting City Attorney, argued the cause for appellants (Karen Taylor-Lewis, City Attorney; Dennis G. Kille, on the briefs).
Robert F. Williams argued the cause for respondents (David R. Brooks, attorney; David R. Brooks on the brief).
The opinion of the court was delivered by HAVEY, J.A.D.
Defendants City of Camden (City), Leonard J. DiMedio, the City Building Inspector, and Walter Richardson, the City's *191 Director of Public Works appeal, by leave granted, from an order granting class certification to the named plaintiffs under R. 4:32. The named plaintiffs are property owners in the City whose dwellings were damaged or destroyed by fires originating in City-owned, abandoned dwellings. Plaintiffs' complaint seeks damages and injunctive and declaratory relief for themselves and for "dozens or hundreds of persons ... [who] have been damaged by defendants' negligence, unconstitutional or unreasonable conduct." In granting plaintiffs' motion to maintain the class action, the trial judge found that plaintiffs had met the conditions under R. 4:32-1(b)(1)(A) and (B) and -1(b)(3).
On appeal, defendants argue that the conditions under the class action rule were not satisfied because: (1) the purported "class" is not sufficiently numerous for class certification; (2) its identity is too "ill-defined," and (3) separate issues of liability, causation and damages relating to the property damage of each proposed class member mandate separate trials. We reverse, concluding that plaintiffs have not met the requirements for class certification under R. 4:32.
According to plaintiffs' complaint, six of the named plaintiffs owned dwellings on Royden Street which were damaged by a fire occurring on March 17, 1987. Plaintiffs Robledo own property on Garfield Avenue which was destroyed by a fire occurring on July 6, 1988. The gravamen of the complaint is that the City's failure to maintain or secure its abandoned buildings has permitted vandals to occupy them and set fires which spread to adjoining structures. They claim that the City-owned structures are "hazardous and attractive nuisances," and the City's failure to maintain the structures constitutes negligence and has caused or will cause an unlawful taking of the property of class members in violation of the New Jersey Constitution.
In moving for class certification, the named plaintiffs sought to represent:

*192 all homeowners in the City of Camden whose homes have been, or have the potential of being, damaged by fires starting in and spreading from abandoned derelict houses owned and controlled by defendant City of Camden.
For purposes of plaintiffs' motion, defendants were deemed to have admitted that between January 1984 and May 1990, over 80 privately-owned structures in the City had been damaged or destroyed by fires originating in City-owned, abandoned buildings. In most cases the buildings had been acquired by the City through tax foreclosures. According to Camden Fire Department "run reports," 61 fires during the pertinent time period had spread to and damaged private dwellings.
Plaintiffs argued that they had satisfied the prerequisites for a class action because questions of law and fact were common to all members of the class. Specifically, plaintiffs anticipated common questions of fact concerning: (1) the nature of defendants' efforts, or lack thereof, to secure abandoned properties; (2) the relationship between abandonment and arson; (3) defendants' knowledge of such relationship, and (4) reasonable standards in securing or demolishing abandoned properties. Plaintiffs argued that common legal questions were raised concerning: (1) defendants' liability under the Tort Claims Act, N.J.S.A. 59:1-1 to -12.3; (2) deprivation of plaintiffs' property rights without due process of law in violation of the N.J. Const. of 1947 art. I, para. 1; (3) a taking of plaintiffs' property without just compensation in violation of N.J. Const. of 1947 art. I, para. 20, and (4) the validity of defendants' attempts to require plaintiffs to demolish or secure their own property damaged by the fires.
In granting plaintiffs' motion, the trial judge concluded that plaintiffs had satisfied the numerosity, commonality, typicality and adequacy of representation conditions under R. 4:32-1(a). He also determined that without class certification there was a possibility of inconsistent or varying adjudications and a risk that adjudications respecting individual class members may be dispositive of the interests of other members not parties to the litigation. He also found that the questions common to the *193 members predominate over questions affecting only individual members. However, the judge established two "subclasses":
1. Class One, composed of individuals who own residential properties located within the City of Camden which have been damaged by fires originating in vacant, city-owned structures; and
2. Class Two, composed of individuals who own residential properties located within the City of Camden and who may potentially suffer damages as a result of fires originating in vacant, city-owned structures.

I
In order to maintain a class action, the threshold requirements of numerosity, commonality, typicality and adequacy of representation must be fulfilled under R. 4:32-1(a). In re Cadillac V8-6-4 Class Action, 93 N.J. 412, 424-25, 461 A.2d 736 (1983). We agree with the trial judge that plaintiffs satisfied these requirements. The class of 81 property owners seeking money damages is sufficiently large to meet the numerosity requirement. R. 4:32-1(a)(1). There is a common theory of liability applicable to the entire class: defendants' failure to implement or administer a policy regulating abandoned City-owned dwellings caused plaintiffs' damages. R. 4:32-1(a)(2). Plaintiffs' claims under the Tort Claims Act and the New Jersey Constitution are "typical" of the claims of all class members. R. 4:32-1(a)(3). Finally, plaintiffs' claims have the essential characteristics common to the claim of the class, and thus plaintiffs will protect the interests of the class. R. 4:32-1(a)(4). See also In re Cadillac, 93 N.J. at 425, 461 A.2d 736.
Once the threshold requirements under R. 4:32-1(a) have been met, plaintiffs must then satisfy one of three alternative requirements under R. 4:32-1(b). The judge here certified the class under -1(b)(1)(A); -1(b)(1)(B), and -1(b)(3).
Under subpart (A) of 4:32-1(b)(1), a cause of action may be maintained if the prosecution of separate actions would create a risk of "inconsistent or varying adjudications ... which would establish incompatible standards of conduct for the party *194 opposing the class[.]" Subpart (A) is designed to protect the party opposing the class action, not the party seeking it. See 3B Moore, Federal Practice § 23.35[1] at 239 (2d ed. 1991).[1] Thus, a defendant may have duties toward numerous persons constituting a class and
"be so positioned that conflicting or varying adjudications in law suits with individual members of the class might establish incompatible standards to govern his conduct. The class action device can be used effectively to obviate the actual or virtual dilemma which would thus confront the party opposing the class."
Id. at 240-41 (quoting Advisory Committee Note, § 23.01 at 19) (emphasis added). Moreover, in order for subpart (A) to apply, not only must the potential individual adjudications be inconsistent, they must also result in incompatible standards of conduct being imposed on the party opposing the class. R. 4:32-1(b)(1)(A). Many courts have gone so far as to hold that subpart (A) should be used only where there is a "total absence of individual issues." 3B Moore, § 23.35[1] at 245; see also Gallano v. Running, 139 N.J. Super. 239, 249, 353 A.2d 158 (Law Div. 1976), certif. denied, 75 N.J. 600, 384 A.2d 830 (1978).
Here, subpart (A) is not applicable because it has not been asserted by defendants, the parties opposing the class action. Moreover, it can hardly be said that there is a "total absence of individual issues." As hereafter stated, unique factual and legal issues respecting the origin of the fire, proximate cause and damage to each property abound. Because of the discrete conditions surrounding the separate fire and consequential damage to each of the residential structures, it is doubtful that an adjudication in a suit by a specific plaintiff or group of plaintiffs will establish incompatible standards of conduct on the part of defendants.

*195 II
We also find no basis for a class action under subpart (B) of R. 4:32-1(b)(1). The focus under subpart (B) is to protect the interests of the class members, since it permits the maintenance of a cause of action if a prosecution of separate actions by or against individual class members would create a risk of
adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests[.]
This subpart is intended to embrace situations where a judgment of a nonclass action by a class member, while not technically including the other members, might do so "as a practical matter." This would be the case, for example, when claims by numerous persons are made against a fund which is insufficient to satisfy all claims, see In re A.H. Robins Co., Inc., 880 F.2d 709, 741 (4th Cir.), cert. denied sub nom., Anderson v. Aetna Casualty & Sur. Co., 493 U.S. 959, 110 S.Ct. 377, 107 L.Ed.2d 362 (1989), or if injunctive relief in favor of one class member may disable the party opposing the class action from performing its duties toward the other class members. 3B Moore, § 23.35[2] at 251-52. Moreover, most authorities conclude that the
mere stare decisis effect of an individual adjudication is not ordinarily enough as a practical matter to be dispositive of other members' interest, and that a dispositive impact more in the nature of a legal necessity traceable to a joint or common right, such as disposition of a property interest, ... is required.
Id. at 254. See also In re Dennis Greenman Sec. Litig., 829 F.2d 1539, 1546 (11th Cir.1987); but see In re A.H. Robins Co., Inc., 880 F.2d at 741 (mass Dalkon Shield tort litigation involving over 300,000 claims is "classic type" of "limited fund" embraced within (b)(1)(B)).
Based on the record as presently constituted, we cannot say that this is a "limited fund" case. No one has demonstrated or even suggested that the City or its liability carrier have limited resources to cover potential future claims. Moreover, there is no showing that an adjudication in an individual case will, as a *196 practical matter, dispose of the claims of other class members. Because of the discrete factual circumstances surrounding each fire, stare decisis should have little import on future claims. For example, an adjudication in favor of defendants in an individual case where their liability was remote, should not discourage another plaintiff or group of plaintiffs from filing separate actions if defendants' liability is apparent. Finally, absent here is the probability that a single adjudication will have a "dispositive impact" involving a "joint or common right." 3B Moore, § 23.35[2] at 254.

III
The question then becomes whether the trial judge was correct in certifying the class under R. 4:32-1(b)(3), which permits maintenance of a class action if:
the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The factors pertinent to the findings include: first, the interest of members of the class in individually controlling the prosecution or defense of separate actions; second, the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; third, the difficulties likely to be encountered in the management of a class action.
Thus, under 4:32-1(b)(3), the movant must demonstrate both the predominance of the common issues and the "superiority" of a cause of action over other available trial techniques.
In reviewing the trial judge's grant of class certification, we are mindful that the class action rule should be liberally construed and a class action should be permitted unless there is a clear showing that it is inappropriate or improper. Lusky v. Capasso Bros., 118 N.J. Super. 369, 373, 287 A.2d 736 (App.Div.), certif. denied, 60 N.J. 466, 291 A.2d 16 (1972). We also acknowledge that certification of a class action should not be denied because of the underlying theory in which the action is predicated. In re Cadillac, 93 N.J. at 426, 461 A.2d 736. See also Wagner v. Taylor, 836 F.2d 566, 587 *197 (D.C. Cir.1987). However, identification of the issues to determine if class certification is suitable requires "some preliminary analysis" of the underlying theories of liability and predictable defenses. In re Cadillac, 93 N.J. at 426, 461 A.2d 736. We must therefore examine plaintiffs' theories of liability and the predictable defenses in deciding whether a class action under subsection -1(b)(3) is merited.
In considering the issue of predominance under 4:32-1(b)(3), the goal is to "save time and money for the parties and the public and to promote consistent decisions for people with similar claims." In re Cadillac, 93 N.J. at 430, 461 A.2d 736. Also, all issues need not be identical among all members of the class; common questions must simply predominate. Fiore v. Hudson Cty. Employees Pension Comm'n, 151 N.J. Super. 524, 528, 377 A.2d 702 (App.Div. 1977). "If a `common nucleus of operative facts' is present, predominance may be found." In re Cadillac, 93 N.J. at 431, 461 A.2d 736 (quoting 7A Wright & Miller, Federal Practice & Procedure § 1778 at 54 (1972)).
As we have stated, the centerpiece of plaintiffs' theory of liability is that the properties of prospective class members were damaged or destroyed by fire caused by defendants' failure to implement or administer a policy concerning City-owned structures. This theory is clearly common to all class members. However, commonality becomes obscured when the probable unique issues of liability, causation and damages in each case are considered, requiring individualized treatment at trial. It is alleged that over 80 privately-owned dwellings were damaged by 61 separate fires over a six-year period. Some were caused by arson; some had undetermined origins. The cause of each fire, and whether the absence of a City protective or maintenance policy contributed to it will, no doubt, be fact-sensitive issues resolved by fact-specific proofs. Resolution of the issue of proximate cause in each case as well will depend on the unique circumstances of each case, such as the presence or absence of intervening causes or factors over which defendants *198 had no control. See Bieneman v. City of Chicago, 864 F.2d 463, 465 (7th Cir.1988), cert. denied sub nom., City of Chicago v. Bieneman, 490 U.S. 1080, 109 S.Ct. 2099, 104 L.Ed.2d 661 (1989) (class action not allowed on behalf of 3,000 residents adversely affected by airport noise in view of different effect on each owner depending on topography, flight patterns, and many other variables). See also Raye v. Medtronic Corp., 696 F. Supp. 1273, 1275 (D.Minn. 1988).
Moreover, plaintiffs' negligence claim is made under the Tort Claims Act. Under N.J.S.A. 59:2-3d, the public entity is not liable for the exercise of discretion when, in the face of competing demands, it determines how to utilize existing resources, unless its determination is palpably unreasonable. See also N.J.S.A. 59:4-2 (public entity's failure to protect against dangerous condition on public property is not actionable if its conduct was not palpably unreasonable). According to defendants, the City decides whether or not to expend available resources for maintenance of City property on a building-by-building basis. Thus, whether or not its failure to expend its resources in boarding up a particular building was "palpably unreasonable" will depend upon circumstances peculiar to that building.
For example, the record establishes that the duration of time the City owned abandoned buildings prior to each fire varied to a substantial degree. One property was owned for seven years; another for only four months. Thus, the duration of ownership, whether the City had notice of vandals occupying each structure and other pertinent factors must be scrutinized on a case-by-case basis in resolving the "palpably unreasonable" issue. We note also that according to the record, some of the proposed class members have filed Notices of Claim pursuant to N.J.S.A. 59:8-8 and some have not. Assertion of this *199 defense will also require individualized treatment at trial.[2]See Raye, 696 F. Supp. at 1275 (class action involving injuries caused by pacemaker not allowed because many issues, including application of statute of limitation defenses, will vary with respect to each member of the suggested class). For these reasons, the case is distinguishable from In re Cadillac, where the core of the dispute involved a specific design defect in a single model and year Cadillac, which raised common questions of law and fact concerning the defect, General Motors' knowledge of the defect and the terms of General Motors' express warranty. 93 N.J. at 434-35, 461 A.2d 736. We therefore conclude that plaintiffs failed to satisfy the "predominance" prong under R. 4:32-1(b)(3).
The second prong under R. 4:32-1(b)(3) is that the class action be "superior" to other available means of adjudicating the controversy. The word "superior" implies a "comparison with alternative procedures such as a test case or joinder of claims." In re Cadillac, 93 N.J. at 436, 461 A.2d 736. See also Katz v. Carte Blanche Corp., 496 F.2d 747, 757 (3rd Cir.), cert. denied, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974). That comparison requires:
(1) an informed consideration of alternative available methods of adjudication of each issue, (2) a comparison of the fairness to all whose interests may be involved between such alternative methods and a class action, and (3) a comparison of the efficiency of adjudication of each method.
In re Cadillac, 93 N.J. at 436, 461 A.2d 736 (quoting Katz, 496 F.2d at 757).
*200 We recognize that the lack of financial wherewithal on the part of potential class members has been an important factor in causing the named plaintiffs to move for class action. Such an action would permit plaintiffs' counsel to pool available resources and present their proofs, expert or otherwise, in a single case. Counsels' motive is both practical and laudable. However, in the circumstances present here, we cannot conclude that the interest of economy makes the class action "superior" to other available means of adjudicating the controversy. This is not a case where, because the individual claims are too small to warrant recourse to case-by-case litigation, the "wrongs would go without redress" if class action certification is not granted. See In re Cadillac, 93 N.J. at 435, 461 A.2d 736. Each class member asserts substantial damage or total destruction to his or her dwelling, a virtual "taking" of property, and thus has a sufficient stake to prosecute his or her claim individually or with a group of other plaintiffs.
Also, to the extent that the trial judge may identify a single common issue of law or fact, that issue may be adjudicated by way of a "test case" involving one or more plaintiffs. See id. at 436-37, 461 A.2d 736; Kronisch, 143 N.J. Super. at 428-30, 363 A.2d 376; Katz, 496 F.2d at 760-61. Defendants would be collaterally estopped by the adverse findings of fact against them. Kronisch, 143 N.J. Super. at 429, 363 A.2d 376. On the other hand, members of the prospective class "would not be bound by a judgment in favor of [defendants] in the test case[.]" Id. Such an approach may well achieve the economies of time, effort and litigation expense sought by all parties. For these reasons, we cannot say that the class action approach is "superior" to other means available for a proper adjudication of the rights and claims of the class members.

IV
The class designated as "Class Two" by the trial judge includes property owners "who may potentially suffer damages *201 as a result of fires originating in vacant, city-owned structures." (Emphasis added). For the reasons above expressed, we are satisfied that this class as well should not have been certified. Also, although not specified in the rule, establishment of a class action implicitly requires both that there be an identifiable class and that plaintiff be a member of the class. In re A.H. Robins Co., Inc., 880 F.2d at 728. This class is so ill-defined that it is impossible to determine its parameters. See Fiore, 151 N.J. Super. at 527, 377 A.2d 702 (potential class members must possess the right to make a claim, whether they choose to or not). According to defendants, the City owns over 1,500 structures, and this figure is fluid because the City is continuously acquiring new property through tax foreclosure and selling other properties at tax sales. As defendants persuasively argue, it is therefore virtually impossible presently to define which of the 26,626 residential properties in the City are at future risk of being damaged by fires originating from City-owned dwellings. In our view, classification of such a nebulous class would complicate, rather than aid in the prompt and economic resolution of the controversy.
Moreover, to the extent that "Class Two" members seek an injunctive or mandamus remedy, such relief can be granted to the named plaintiffs and inure to the benefit of all owners of residential structures in the City. See Dionne v. Bouley, 757 F.2d 1344, 1356 (1st Cir.1985) (class action for injunctive relief under Fed.R.Civ.P. 23(b)(2) denied because the same relief can be obtained through individual injunction without complications of class action). See also Malhame v. Borough of Demarest, 162 N.J. Super. 248, 259, 392 A.2d 652 (Law Div. 1978), appeal dismissed, 174 N.J. Super. 28, 415 A.2d 358 (App.Div. 1980).
Reversed and remanded for further proceedings.
NOTES
[1] Since R. 4:32 is modeled after Fed.R.Civ.P. 23(a) and (b), treatises discussing the federal rule and federal cases may, although not binding, be considered persuasive authority. See Kronisch v. Howard Sav. Inst., 133 N.J. Super. 124, 138, 335 A.2d 587 (Ch.Div. 1975), rev'd on other grounds, 143 N.J. Super. 423, 363 A.2d 376 (App.Div. 1976).
[2] We need not decide the question of whether a claim of taking of property in violation of the New Jersey Constitution is subject to the provisions of the Tort Claims Act. Cf. Fuchilla v. Layman, 109 N.J. 319, 331, 537 A.2d 652 cert. denied sub nom., University of Medicine & Dentistry of N.J. v. Fuchilla, 488 U.S. 826, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988); McGrath v. New Jersey Dist. Water Supply, 224 N.J. Super. 563, 570, 540 A.2d 1350 (Law Div. 1986). Nor need we decide whether or not defendants have waived their right to assert as a defense the class members' failure to give Notice of Claim under the act. These issues are considered only in the context of deciding the correctness of class certification ordered by the trial judge.