696 A.2d 793

BERNARD GROSS, STEPHEN FEINBERG, PATRICIA M. DIMARCO
AND LORETTA LENTO, ON BEHALF OF THEMSELVES AND
ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS, v. JOHN-
SON & JOHNSON-MERCK CONSUMER PHARMACEUTICALS
CO., JOHNSON & JOHNSON AND MERCK & CO., INC., DEFEN-
DANTS.

Superior Court of New Jersey
Law Division
Burlington County

Decided February 5, 1997.

*Christopher T. Reyna* (admitted *pro hoc vice*) for plaintiffs (*Bernard M. Gross, P.C.,* attorneys; *Deborah R. Gross* on the brief); (*Kalikman & Masnik,* attorneys; *Peter L. Masnik* on the brief).

*Steven A. Zalesin,* (admitted *pro hoc vice*) for defendants (*Patterson, Belknap, Webb & Tyler,* attorneys); (*Bazelon & Less,* attorneys; *Jeffrey A. Less,* on the brief).

WELLS, A.J.S.C.

This is a case involving a consumer fraud lawsuit against Johnson & Johnson–Merck Consumer Pharmaceuticals (hereinafter "J & J") for its allegedly false advertising of a product it manufactures and markets called Pepcid AC (hereinafter "Pepcid"). The Plaintiffs seek through the instant motion to represent a nationwide class of persons who between June 12, 1995, and October 20, 1995, purchased Pepcid and suffered ascertainable losses, including at the minimum purchasing Pepcid when they would not otherwise have done so or at prices they would not otherwise have paid.

Pepcid is a relatively new non-prescription product which is designed to prevent heartburn and acid indigestion. Between June 12, 1995, and October 20, 1995, J & J ran a nationwide

advertisement campaign [1] for Pepcid. Plaintiffs assert that J & J violated the consumer protection statutes of all U.S. states, including *N.J.S.A.* 56:8–1 through –48, and committed common law fraud and/or negligent misrepresentation. The advertisements that plaintiffs allege were inaccurate and misleading are:

(1) 8 out of 10 doctors and pharmacists chose Pepcid AC acid controller over Tagamet HB;

(2) Pepcid controls acid for 9 hours—all day or all night; and,

(3) Only Pepcid AC has proven that it can prevent heartburn and indigestion.

J & J blanketed the marketplace with air and print media containing a wide variety of claims promoting Pepcid, most of which have never been challenged. Two of the three claims that plaintiffs now challenge (see above) were enjoined in a lawsuit with SmithKline Beecham in October and December of 1995.[2] J & J states that none of these three claims was published in May of 1995, nor have they aired since November of 1995.

After consideration of the briefs submitted and the argument of counsel, I conclude that class certification should be denied, as individual questions of law and fact predominate over those common to the proposed class. While recognizing the strong preference of the New Jersey courts in favor of granting class certification, this case is distinguishable from the situation envisioned by our courts as appropriate for class action disposition.

As a general matter, New Jersey courts, as well as federal courts construing the federal class action rule after which our rule is modeled, have consistently held that the rule must be

---

[1] The campaign has continued unabated thereafter but only with the representations that the New York District Court found to be proper. *See, infra,* text page 340, 696 *A.2d* at 795, footnote 2.

[2] *See SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson–Merck Consumer Pharmaceuticals Co., Inc.,* 906 F.Supp. 178 (S.D.N.Y.1995). In August of 1995, SmithKline sued J & J in the Southern District of New York for making false and misleading statements in violation of the Lanham Act. The Honorable Harold Baer, Jr. preliminarily enjoined J & J from making these statements in its advertisements.

liberally construed and that the proposed class action be permitted unless there is a clear showing that it is improper or inappropriate. *Riley v. New Rapids Carpet Center,* 61 *N.J.* 218, 228, 294 *A.2d* 7 (1972); *In re Cadillac V8–6–4 Class Action,* 93 *N.J.* 412, 435, 461 *A.2d* 736 (1983); *Delgozzo v. Kenny,* 266 *N.J.Super.* 169, 179, 628 *A.2d* 1080 (App.Div.1993). Also, the determination of class certification must be made with reference to the criteria for maintaining a class action. Plaintiffs' chances of winning on the merits are irrelevant. *Delgozzo,* 266 *N.J.Super.* at 180–81, 628 *A.2d* 1080.

The requirements for class action suits are governed by *Rule* 4:32. The requirement to qualify for class certification consists of a two-step process. The prerequisites that first must be satisfied under *R.* 4:32–1(a) are: (1) numerosity; (2) questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of those of the proposed class; and (4) the representatives will fairly and adequately protect the interests of the class. Second, if these four elements are met, then under subsection (b) of the rule one of three alternatives for the maintainability of the class action must be satisfied. The plaintiffs in this case seek to certify their proposed class under *R.* 4:32–1(b)(3) which requires both the predominance of common questions of law or fact over questions affecting only the individual members, and the superiority of a class action over other available methods of adjudication. The factors pertinent to a (b)(3) finding include the interests of the class members in individually controlling the prosecution or defense of separate actions, the extent and nature of any litigation concerning the controversy already commenced by or against members of the class, and the difficulties likely to be encountered in the management of a class action. *R.* 4:32–1(b)(3).

Plaintiffs assert that they have satisfied all of the prerequisites for class certification set forth in *R.* 4:32–1(a), and I agree. First, the *R.* 4:32–1(a)(1) requirement of numerosity of proposed plaintiffs is met here. *See, e.g., Delgozzo,* 266 *N.J.Super.* at 184,

628 *A.*2d 1080 (potential class of 35,000 members); *Saldana v. City of Camden,* 252 *N.J.Super.* 188, 193, 599 *A.*2d 582 (App.Div. 1991) (potential class of 81 members). Plaintiffs have alleged in their complaint "thousands of members of the class ...," and through the discovery process they claim they will establish with more specificity the identity of the potential members.

Next, the *R.* 4:32–1(a)(2) requirement of commonality of questions of law or fact is also met here. To meet this requirement under subsection (a), the class as a whole must raise at least one common question of law or fact. Phillip Steven Fuoco, Robert F. Williams, *Class Actions in New Jersey State Courts,* 24 *Rutgers L.J.* 737, 752 (1993). In this instance the entire class alleges a common theory of liability under claims of misrepresentation of advertising by J & J leading to their injuries. Common facts are present as the complaint refers to the same two advertisements, thus corollary questions of fact with respect to the advertisements also exist.

■ The *R.* 4:32–1(a)(3) requirement of typicality of claims of the plaintiffs and the rest of the proposed class overlaps with the test for *R.* 4:32–1(a)(4), adequacy of representation. *See In re Cadillac, supra,* 93 *N.J.* at 425, 461 *A.*2d 736. A plaintiff's claim is typical of the claims of the class if it arises from the same event or course of conduct which has given rise to the claims of the other class members. *Id.* Here the plaintiffs' claims arise from the same nationwide advertising practices of J & J in connection with the sale and marketing of the same product; thus, plaintiffs have satisfied the typicality requirement of the rule.

■ The last requirement of *R.* 4:32–1(a) that the plaintiffs fairly and adequately represent the interests of the class is presumed in New Jersey courts, and the burden is on the opposing party to demonstrate that the proposed representation will be inadequate. *Delgozzo, supra,* 266 *N.J.Super.* at 188, 628 *A.*2d 1080. Elements of this requirement include the interests of the named representatives being co-extensive with the interests of the other members of the class and assurance that the representatives

will vigorously prosecute the interests, which requires the assistance of responsible and able counsel. *See Gallano v. Running*, 139 *N.J.Super.* 239, 353 *A.2d* 158 (Law Div.1976). The plaintiffs' individual claims present no conflict of interest with the claims of the proposed national class, as all class members are retail consumers of Pepcid. Also, plaintiffs' counsel is clearly qualified to represent a class such as this, judged from their resumes attached to their brief; thus, this requirement has been satisfied.

While the threshold requirements of *R.* 4:32–1(a) have been satisfied, the inquiry does not end there. Plaintiffs must also satisfy *R.* 4:32–1(b), third subsection, requiring that common questions of law and fact predominate and that a class action is the superior method for adjudication of these claims. This is clearly the more difficult question, and it is also where plaintiffs, in my opinion, fail in their attempt to be certified as a class.

■ If a "common nucleus of operative facts" exists and the plaintiffs seek to redress a common legal grievance, then predominance of common law or facts may be found. *In re Cadillac*, *supra*, 93 *N.J.* at 430–31, 461 *A.2d* 736. While individual issues of causation, reliance and damages do not preclude class certification, *Strawn v. Canuso*, 140 *N.J.* 43, 67, 657 *A.2d* 420 (1995), common questions of law or fact must outweigh individual questions in order to satisfy the predominance requirement. *See Saldana*, *supra*, 252 *N.J.Super.* at 196–99, 599 *A.2d* 582.

In order to ascertain whether or not common questions predominate, we must analyze the legal issues and the proofs needed to sustain them. The following issues of law or fact are common to the case:[3] (1) the claims that J & J made in the three advertisements during the class period; (2) the circumstances that rendered each of the claims false/misleading; (3) the wide dissemination of the claims; and, (4) J & J's intent. The individual issues that exist in the case are: (1) whether each plaintiff saw the

---

[3] Neither this nor the list of individual issues are intended to control in any later proceedings that may arise in the case.

advertisements; (2) whether he/she then relied on those specific advertisements when purchasing Pepcid; (3) whether he/she suffered an ascertainable loss as a result of the purchase.

In the instant matter plaintiffs have set forth counts in their complaint alleging fraud, negligent misrepresentation and violations of the New Jersey Consumer Fraud Act and those of all other states. In order to establish a case for common law legal fraud, a plaintiff must prove material representation of a presently existing or past fact; knowledge or belief by the defendant of its falsity; an intention that the other person rely on it, reasonable reliance thereon by the other person and resulting damages. *The Jewish Center of Sussex Cty. v. Whale,* 86 *N.J.* 619, 624–25, 432 *A.*2d 521 (1981); *Van Dam Egg Co. v. Allendale Farms, Inc.,* 199 *N.J.Super.* 452, 456–57, 489 *A.*2d 1209 (App.Div.1985).

To establish their claim sounding in negligent misrepresentation, plaintiffs must prove that an incorrect statement was negligently made and justifiably relied upon to recover damages for economic loss or injury sustained as a consequence of that reliance. *H. Rosenblum, Inc. v. Adler,* 93 *N.J.* 324, 334, 461 *A.*2d 138 (1983).

The New Jersey Consumer Fraud Act provides that

"(t)he act, use or employment by any person of unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby is declared to be an unlawful practice...."

[*N.J.S.A.* 56:8–2]

Affirmative acts prohibited by the Consumer Fraud Act, including conduct such as alleged in our situation, require no showing of intent. *Cox v. Sears Roebuck & Co.,* 138 *N.J.* 2, 647 *A.*2d 454 (1994). A private plaintiff, however, must not only show a violation of the Act, but must also demonstrate that he or she "suffered an ascertainable loss ... as a result of the unlawful

conduct." *Meshinsky v. Nichols Yacht Sales, Inc.*, 110 *N.J.* 464, 473, 541 *A.*2d 1063 (1988); *Miller v. American Family Pub.*, 284 *N.J.Super.* 67, 663 *A.*2d 643 (Ch.Div.1995). In addition, there must be a "causual relationship" between the unlawful practice and the "ascertainable loss" sustained by the plaintiff. *Ramanadham v. N.J. Mfrs. Ins. Co.*, 188 *N.J.Super.* 30, 33, 455 *A.*2d 1134 (App.Div.1982); *Miller*, 284 *N.J.Super.* at 76, 663 *A.*2d 643.

A brief sampling of the deposition testimony of the representative class members who instituted this lawsuit illuminates the enormous difficulties that will be encountered in attempting to establish the elements of reliance, ascertainable loss or injury for plaintiffs' claims. For example, plaintiff Loretta Lento testified at her deposition on July 29, 1996 that she purchased Pepcid in June of 1995 because she saw "the" advertisement on television. When questioned as to which television advertisement she saw, she couldn't remember. In fact, she stated, "I don't remember that, if I saw a lot of commercials, but I saw that it was advertised on TV and also some of my friends told me that they took it." Also, when questioned as to the content of these advertisements she couldn't remember what was depicted in the advertisements, nor could she remember when she saw the Pepcid advertisements or whether she saw one commercial or several different commercials. When questioned as to the newspaper advertisements, Ms. Lento stated that she remembered seeing a newspaper advertisement once, but that she couldn't remember what it said. She stated, "I just saw Pepcid Acid, that is it, I don't know. I don't remember. I didn't read it. I just quickly noticed it being advertised."

Plaintiff Stephen Feinberg paints no clearer a picture of his recollection of the advertisements for Pepcid. He stated at his deposition on August 1, 1996, "I don't remember [the advertisements] word for word but what impressed me was that they convinced me that if I applied it twenty minutes before I ate that I could avoid heartburn. This is what interested me. But I know one of the ads, I don't know which one now say so many doctors

prefer this over that or that over this, but I didn't record it and I don't know which one it was."

Plaintiff Bernard Gross [4] testified at his deposition on August 1, 1996 that he purchased Pepcid because of the magazine and newspaper advertisements. Again he was not especially specific with regard to the exact advertisements he saw, but he did state that the phrase was "something like nine out of ten doctors recommend [Pepcid]." However, when questioned as to whether there was a difference to him as a consumer between the representations "nine out of ten" or "eight out of ten" doctors recommend Pepcid, he couldn't say if it would have made a difference in his purchasing Pepcid. As to the representation "seven out of ten" doctors recommend Pepcid, the most he could say was that, "It could have made a difference." Even granting Mr. Gross the benefit of the doubt that his testimony could establish reliance on one of the particular advertisements that the lawsuit now challenges, he further stated that he believed that his injury as a result of purchasing Pepcid based on these advertisements had nothing to do with the price he paid for a box of Pepcid, which is the exact damage that this lawsuit alleges.

Therefore while common issues certainly exist in the instant matter in that the dispute is premised upon the false and misleading nature of publicly disseminated advertisements of Pepcid by J & J, the question of whether each consumer purchased Pepcid AC in *reliance* on those three particular advertisements during a massive media "blitz" would necessarily be highly individualized and complex. As only persons who saw the challenged advertisements, relied on the challenged advertisements in purchasing Pepcid, and would not have purchased the Pepcid but for the challenged advertisements should be included in the class, individual questions predominate over questions in common.

---

[4] Despite the similarity of name Mr. Gross is not related to any member of the law firm representing plaintiffs.

While the New Jersey Supreme Court has maintained the proposition that class certification must be liberally construed, the factual bases behind the decided cases are very different from the facts now before this court. For instance, the focus in the *In re Cadillac* and *Delgozzo* cases essentially was on the defect in the products which was common to all members of the proposed classes. Proof of causality and injury flowed from this common defect. The *Strawn* case, also cited by plaintiffs as support for their motion, dealt with the sale of homes in a housing development that was situated near a landfill, and again the proofs of causality and injury flowed from that common factual nucleus.

However, courts in other jurisdictions have dealt directly with the fact situation of class certification in false advertising cases. In *Strain v. Nutri/System, Inc.*, plaintiffs alleged that defendant misrepresented the results of its weight loss program in nationwide television, radio and newspaper advertisements. 1990 WL 209325, *6 (E.D.Pa. Dec.12, 1990). The court stated:

"In the instant case, the proposed class consists of all individuals who joined Nutri/System. Implied in that class definition is the conclusory assumption, that everyone who joined did so in reliance on the advertising.... (S)atisfaction of the reliance issue, requires each class member to narrate a story which includes individualized proof of which advertisements he saw and whether they indeed enrolled in reliance of those advertisements. There are no shortcuts. The proposed class may include individuals who joined Nutri/System's upon the recommendation of a friend or for some other personal reasons. Lacking in this case is a single set of operative facts that can be applied on a class wide basis.... Because the incidents did not occur in a single place, at the same time, or under identical conditions individualized issues of causation arise. In the instant matter, the determination of liability of the defendant requires individualized proof pertinent to each advertisement, interview and subsequent sign-up." *Id.* at *6.

The court found the fact that an individual signed up for the Nutri/System Program not to be evidence that she was induced to do so by the allegedly fraudulent misrepresentation. *Id.* at *7. The court ultimately held that individualized questions of reliance would predominate over common issues at trial and that a class action is not superior to other methods for the fair and efficient adjudication of the controversy. *Id.* at *8.

Another Eastern District case, *Rosenstein v. CPC*, further supports the principle that class action suits are not appropriate in consumer fraud actions based on false advertising. 1991 WL 1783, *1 (E.D.Pa.). Plaintiffs in the *Rosenstein* case claimed that defendant CPC began to market Mazola corn oil under the allegedly fraudulent claim that an individual's consumption of Mazola would reduce his existing serum cholesterol levels. 1991 WL 1783, *1 (E.D.Pa.). The complaint alleged counts of common law fraud, negligent misrepresentation, violations of consumer fraud statutes, RICO violations and breach of warranty. *Id.* Plaintiffs defined the class as all persons in the United States who purchased at retail Mazola corn oil or margarine produced and marketed by defendant CPC. *Id.* at *2.

Plaintiffs in the *Rosenstein* case asserted that because of Mazola's supposed serum cholesterol lowering capability, CPC marketed Mazola at higher prices than other cooking oils and margarine. The marketing scheme enticed plaintiffs and other consumers to purchase Mazola in lieu of other similar products, and thus pay more than they normally would have for other cooking oils and margarine. *Id.*

The court found that the requirements of F.R.C.P. 23(b)(3)[5] were not met, as individual issues of law and fact predominated over common issues of law and fact. *Id.* at *2. As the plaintiffs' RICO claims required a showing of actual injury, plaintiffs had to show that all members of the class reasonably relied upon the allegedly fraudulent acts. The court thus determined that reliance would have to be proved on an individual basis because not all class members purchased Mazola in reliance of CPC's claim that the product could lower cholesterol levels. *Id.* at *3. The court stated that "it may be relevant to determine for each class member whether they saw the advertisements; whether they believed the advertisements; whether they would have purchased Mazola notwithstanding the advertisements; ... whether they

---

[5] The federal rule equivalent of New Jersey *R.* 4:32–1(b)(3).

purchased Mazola for reasons unrelated to the cholesterol lowering claims.... Proof of these issues would be complex and highly individualized as each class member must prove he or she did in fact rely upon the advertisements." *Id.* Individual issues predominate because plaintiffs must establish which members of a class, which may include millions of people, reasonably relied on the advertisements at issue. *Id.* at *5.

The plaintiffs' state law claims of fraud and negligent misrepresentation in the Mazola case were predicated on allegations of false and misleading advertising. *Id.* at *6. The Mazola court stated that in an action for fraud, an essential element of the claim is the plaintiff acting in reliance on the defendant's misrepresentations. The court further stated that individual questions of reliance predominate over common questions, thus "the fraud cause of action is generally not appropriate for resolution in a plaintiff-class action." *Id.* (citing *Strain,* 1990 WL 209325 at *9).

In my opinion the situation in the present case is different than those in the cited New Jersey cases. New Jersey has never certified a class action in a mass media false advertising case. Here we are faced with a proposed class of consumers who allegedly were induced to purchase a certain product based on allegedly deceptive advertising practices. Under New Jersey law, fraud depends upon proof of a central element: reliance on the allegedly false statements. Negligent misrepresentation requires proof of proximate cause, and under the Consumer Fraud Act, it must be established that the false statements are linked to some "ascertainable loss" on the part of the consumer. This makes the situation before the court much more similar to the facts in *Strain* and the Mazola case. Fraud cases are markedly different from products liability cases in that a key focus of the proofs is on the reliance element of the claim, rather than the self evident link between defect and damage. In order for plaintiffs to prove that each individual member of the class relied on those particular advertisements, every single member of the class would have to answer individualized questions as to whether each member of the

proposed class of plaintiffs relied on at least one of three particular advertisements from a plethora of media coverage when deciding to purchase Pepcid and, whether they would not have purchased Pepcid but for the particular advertisements. It is clear that in the instant matter individual questions of reliance predominate over any common issues of fact or law.

Aside from the individual issues predominating over common ones in such a scenario, there is also the problem that, given such highly individualized inquiries, the superiority of class certification to other forms of adjudication, the last requirement for class certification, severely lessens. A determination of whether a class action is "superior" to other forms of adjudication turns on its fairness to all parties and the effect of class certification on efficient judicial management. *In re Cadillac*, 93 *N.J.* at 436, 461 *A.*2d 736.

Plaintiffs argue that the addressing of individual reliance issues could be done at a later phase of the litigation without causing undue case management problems. They draw our attention to cases such as *In re Kirschner Medical Corp. Sec. Litig.*, 139 F.R.D. 74, 83 (D.Md.1991) and *In re ORFA Sec. Litig.*, 654 F.Supp. 1449, 1462 (D.N.J.1987) as examples of this practice. However, the analogy to such cases fails, as these matters involve securities fraud, where there is a specific exception to the requirement that reliance must be proved. The court in the Mazola case specifically found the various devices of presuming reliance to be limited to the securities law context, where courts can assume a nearly perfect market of information, but that such presumptions cannot be made with respect to the consumer market. *Rosenstein*, 1991 WL 1783, *4. Therefore, we are back to the problem of proving each person's reliance on the advertisements on an individual basis, with each person having to narrate his or her personal story.

While in this case the individual claims amount to such nominal sums of money that it would appear to be unreasonable for individual class members to bring suit, that is not to say that the

claims of these individuals would go unredressed. In fact, J & J's allegedly deceptive advertising practices have already been enjoined in the U.S. District Court. The very essence of the competitive market that exists between major pharmaceutical companies such as J & J and SmithKline would ensure the prevention or termination of deceptive or misleading advertisements. Class certification is not the superior method of adjudicating these claims.

Based on the foregoing reasons, plaintiffs motion for class certification is denied.