**Patricia GUNTER, Hubert Maehr, Anna Bartosh, and all persons similarly situated, Plaintiffs,**

v.

**RIDGEWOOD ENERGY CORPORATION, Robert E. Swanson, Gary L. Hall, and Hall–Houston Oil Company, Defendants.**

Civ. No. 95–438 (WHW).

United States District Court, D. New Jersey.

Dec. 28, 1998.

G. Martin Meyers, Meyers & Milewski, P.C., Denville, NJ, for Plaintiffs Patricia Gunter, Hubert Maehr, Anna Bartosh.

Joseph Sternberg, Goodkind Labaton Rudoff & Sucharow LLP, New York, NY, for Plaintiffs Patricia Gunter, Hubert Maehr, Anna Bartosh.

William T. Reilly, McCarter & English, LLP, Newark, NJ, for Defendants Hall–Houston Oil Co. and Gary L. Hall.

Retta A. Miller, Jackson Walker L.L.P., Dallas, TX, for Defendants Hall–Houston Oil Co. and Gary L. Hall.

Daniel Deleuw Caldwell, Edwards Caldwell & Poff, Hawthorne, NJ, for Defendants Ridgewood Energy Corp. and Swanson.

## OPINION

WALLS, District Judge.

This matter comes before the Court on the motion of defendants Hall–Houston Oil Co. ("Hall–Houston") and Gary L. Hall ("Hall") for summary judgment to dismiss the complaint and all its claims, the motion of defendants Hall–Houston and Hall to limit the class and to dismiss the claims of the settling plaintiffs, the motion of defendants Robert E. Swanson ("Swanson") and Ridgewood Energy Corp. ("Ridgewood Energy") for summary judgment to dismiss all claims, and the motion of plaintiffs Bartosh, Maehr, and Gunter for partial summary judgment on the RICO claims. The motions of defendants Hall, Hall–Houston, Swanson, and Ridgewood Energy for summary judgment to dismiss the complaint are denied in part and granted in part. The motion of defendants Hall and Hall–Houston to limit the class is granted in part and denied in part. Plaintiffs' motion for partial summary judgment on the RICO claims is denied.

## I. Background and Procedural History

The named plaintiffs as well as the putative class members are all investors in a series of oil and gas limited partnerships (the "Ridgewood Partnerships") allegedly formed and promoted by defendants Ridgewood Energy, its President and Chairman, Swanson, Hall–Houston, and its chief executive officer and director, Hall. (Compl.¶¶ 1, 12, 13.) The Ridgewood Partnerships held interests in oil and gas leases, and financed the well-drilling and construction of production facilities and pipelines in the United States waters of the Gulf of Mexico. According to the plaintiffs, the defendants sold approximately $150,000,000 worth of interests in the partnerships between 1986 and 1990. (Id. ¶ 2.)

Defendant Ridgewood Energy is a corporation involved in the drilling and development of natural gas prospects, and served as the general partner for each of the Ridgewood Partnerships. (Compl.¶ 11.) Defendant Swanson is, and was at all relevant times, the controlling shareholder and chairman of the board of Ridgewood Energy, a managing general partner of many of the Ridgewood Partnerships, and the registered principal and sole shareholder of Ridgewood Securities Corp. ("Ridgewood Securities"). Ridgewood Securities, a registered broker-dealer in New Jersey, offered the limited partnership interests for sale through private placement. Ridgewood Securities is not a party to this case.

Defendant Hall–Houston was, at all relevant times, a Texas corporation engaged primarily in oil and gas exploration in the Gulf of Mexico. Some of the Ridgewood Partnerships participated in such activity through the acquisition of minority working interests in those properties initially operated by Hall–Houston. Defendant Hall is, and was at all relevant times, the chairman, chief executive officer, and a director of Hall–Houston. Hall was a director and shareholder of Ridgewood Energy from 1986 to 1989.

Plaintiffs Bartosh, Maehr, and Gunter invested in nine different Ridgewood Partnerships. Their complaint alleges that the defendants disseminated private placement memoranda and program summaries (the "Offering Materials") for each partnership which included false and fraudulent statements concerning the profitability of the partnerships. (Compl.¶ 25.) Specifically, plaintiffs contend that defendants misrepresented certain projects to contain "proven" oil and gas reserves to be "low risk," and that the results of wells in operation were exaggerated. (Id.) In addition, defendants allegedly failed to disclose material information about the ventures at the time the partnerships were formed, such as independent third party appraisals of an engineering firm which reflected reserves substantially less than those represented by the defendants. (Id. at ¶ 26.) It is also claimed that during the life of the partnerships, defendants fraudulently concealed from the plaintiffs the actual financial health of the drilling ventures and consequently, of the partnerships themselves. (Id. at ¶ 30.) The last significant act of fraud, the plaintiffs charge, occurred when the defendants wrote plaintiffs by letter, dated June 9, 1994, and advised them to approve the sale of the assets of most of the partnerships to the Apache Corporation ("Apache"). (Id. at ¶ 33.) According to the plaintiffs, that letter falsely represented the worth of the partnerships, the benefits of the sale to the plaintiffs, and failed to disclose that certain of the defendants stood to reap considerable gains from that sale. (Id.)

The complaint demands relief of damages, costs, attorney's fees and the imposition of a constructive trust, for violations of: 1) 18 U.S.C. §§ 1961–1968 (the Racketeer Influenced and Corrupt Organizations Act ["RICO"]); 2) 15 U.S.C. §§ 78j(b) and 78t (the Securities and Exchange Act of 1934, Sections 10(b) and 20(a)) and 17 C.F.R. § 240.10b–5 (Rule 10b–5 promulgated under the Act); 3) state law concerning fraud and deceit; 4) state law concerning breach of fiduciary duties; and 5) state law concerning negligent misrepresentation.

The named plaintiffs sought and were granted certification of the class of all investors of the following 23 partnerships:

| DRILLING AND COMPLETION | LEASEBANK |
| --- | --- |
| 1986–I | LEASEBANK II |
| 1986–II | LEASEBANK III |
| 1986–III | LEASEBANK IV |
| 1986–IV | LEASEBANK V |
| 1986–V | |
| 1987–I | |
| 1987–II | |
| 1987–III | PIPELINE |
| 1987–IV | |
| 1987–V | PIPELINE II |
| 1988–I | |
| 1988–II | |
| 1988–III | EQUITY INCOME |
| 1988–IV | |
| 1989–I | EQUITY INCOME, L.P. |
| 1989–II | |
| 1989–III | |

---

Plaintiff Anna Bartosh invested in the following funds: 1988–I, 1988–II, 1989–I, Leasebank II, Leasebank III, Leasebank V, and Equity Income, L.P. Plaintiff Hubert Maehr invested in: 1987–IV, Leasebank IV, and Leasebank V. Plaintiff Patricia Gunter invested in: 1987–IV, Leasebank III, Leasebank.IV, and Leasebank V. *Gunter v. Ridge-*

*wood Energy Corp.,* 164 F.R.D. 391 (D.N.J. 1996).

Now, defendants Hall and Hall–Houston seek to limit the class and move for summary judgment to dismiss the complaint and all its claims. Defendants Swanson and Ridgewood Energy also move for summary judgment to dismiss the complaint. And, plaintiffs move for summary judgment in their favor on the RICO count.

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue of fact and that [it] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. *See Celotex v. Catrett,* 477 U.S. 317, 318, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *See Sound Ship Building Corp. v. Bethlehem Steel Co.,* 533 F.2d 96, 99 (3d Cir.1976), *cert. denied,* 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976). At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine

whether there is a genuine issue for trial. *See Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Wahl v. Rexnord, Inc.* 624 F.2d 1169, 1181 (3d Cir.1980).

### B. Plaintiff's RICO Claim

In the first count of their complaint, plaintiffs alleged that defendants Hall, Hall–Houston, Swanson, and Ridgewood Energy engaged in a pattern of racketeering activity, over a period of approximately eight years, through the sale of limited partnership interests in the Ridgewood Partnerships based on material misrepresentations and misleading financial analysis. Plaintiffs charge that defendants formed an "enterprise" within the meaning of RICO. They claim that the racketeering activity in which defendants participated included mail fraud, wire fraud, securities fraud, and "transporting in interstate commerce goods, wares, merchandise, securities or money of the value of $5,000 or more, converted or taken by fraud or causing persons to travel in interstate commerce in the execution and concealment of a scheme or artifice to defraud." (Compl.¶ 45.)

#### 1. Whether Plaintiffs' RICO Claim Is Barred by the Statute of Limitations

The Supreme Court has held that the statute of limitations for a civil RICO action is four years, the same as that of the Clayton Act. *Agency Holding Corp. v. Malley–Duff & Assocs., Inc.,* 483 U.S. 143, 156, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987). Before the Supreme Court's decision in *Klehr v. A.O. Smith Corp.,* 521 U.S. 179, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997), courts in the Third Circuit applied the "last predicate act" rule to determine when civil RICO claims accrued. That permitted plaintiffs to use any predicate act within the statute of limitations period to recover for any and all past injuries caused by a RICO conspiracy, no matter how much time had passed or when plaintiffs had known or should have known of their claims. In *Klehr,* the Supreme Court invalidated this rule because it extended the

limitations period, and permitted "plaintiffs who know of the defendant's pattern of activity simply to wait, 'sleeping on their rights,' as the pattern continues and treble damages accumulate, perhaps bringing suit only long after the 'memories of witnesses have faded or evidence is lost.'" *Klehr,* 521 U.S. 179, 117 S.Ct. at 1989 (quoting *Wilson v. Garcia,* 471 U.S. 261, 271, 105 S.Ct. 1938, 1944, 85 L.Ed.2d 254 (1985)). However, the Court did not indicate which of the other accrual rules used by courts of appeals should be applied to civil RICO claims.

■ In addition to the last predicate act rule, the Third Circuit employed the "injury and pattern discovery" rule. *See Keystone Ins. Co. v. Houghton,* 863 F.2d 1125, 1130 (3d Cir.1988), *overruled in part* by *Klehr,* 521 U.S. 179, 117 S.Ct. 1984, 138 L.Ed.2d 373. Under this accrual rule, the statute of limitations period for a civil RICO claim "runs from the date the plaintiff knew or should have known that the elements of a civil RICO cause of action existed." *Klehr,* 521 U.S. 179, 117 S.Ct. at 1989, 1992; see *Rolo v. City Investing Co. Liquidating Trust,* 155 F.3d 644, 656 (3d Cir.1998)(under the "injury and pattern discovery accrual method" plaintiffs have four years in which to file suit from the time they discover or should have discovered their injury and the defendants' pattern of racketeering activity). Choosing to reserve judgment, the *Klehr* Court did not disturb this rule.

■ Defendants argue that the burden of proving compliance with the statute of limitations lies with the plaintiffs. For this proposition, they refer the Court to *In re Prudential Ins. Co. of America Sales Practices Litig.,* 975 F.Supp. 584, 598 (D.N.J. 1996). However, that case dealt with the statute of limitations for securities fraud, not RICO. The statute of limitations for securities fraud claims is not applicable to a securities fraud claim asserted as a predicate act in context of a RICO claim. *Helman v. Murry's Steaks, Inc.,* 742 F.Supp. 860, *reargument denied,* 743 F.Supp. 289 (D.Del.1990). Defendants provide no support for their assertion that the plaintiffs bear the burden of proving that their RICO action is not barred by the statute of limitations. Because the statute of limitations is an affirmative defense, it is the defendants' burden to prove that plaintiffs have failed to comply with it. Moreover, because "the applicability of the statute of limitations usually involves questions of fact for the jury," defendants bear a heavy burden in seeking to establish that there is no genuine issue of material fact and that as a matter of law the challenged claims are barred. *Van Buskirk v. Carey Canadian Mines, Ltd.,* 760 F.2d 481, 498 (3d Cir. 1985).

■ To satisfy the injury and pattern discovery rule, plaintiffs must have filed their RICO claim within four years of the date they knew or should have known that the elements of a RICO cause of action existed. Defendants argue that because plaintiffs filed their complaint on January 27, 1995, if they knew or should have known that the elements of a RICO cause of action existed before January 27, 1991, their claim is time-barred. The cause of action accrues when the plaintiff is aware that each factual element comprising a RICO claim is present; "cognizance of the legal implication of these facts, that is, that there is a civil RICO cause of action, is irrelevant." *Keystone,* 863 F.2d at 1128.

■ In order to state a RICO claim under 18 U.S.C. § 1962, a plaintiff must allege: (1) the conducting of, (2) an enterprise, (3) through a pattern, (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). A private plaintiff must also allege injury to his/her business or property to confer standing. *See Sedima,* 473 U.S. at 496, 105 S.Ct. at 3285. It is injury, not racketeering activity, which triggers the accrual of the statute of limitations for a RICO action. *Landy v. Mitchell Petroleum Technology Corp.,* 734 F.Supp. 608 (S.D.N.Y. 1990). Thus, the issue becomes when plaintiffs knew or should have known that defendants conducted an enterprise through a pattern of racketeering activity which injured their business or property.

■ Defendants argue that plaintiffs filed their complaint after the statute of limitations had passed because they were "on in-

quiry notice of the facts upon which they base their claim more than four years before commencement of this action." (Mem. in Supp. of Mot. of Defs. Hall and Hall–Houston for Summ. J. at 17.) Defendants assert that there were several events before January 27, 1991 which put plaintiffs on such inquiry notice. Significantly, they refer to a November 20, 1990 letter from Zoch & Zoch Financial Group, Inc. ("the Zochs"), plaintiffs' financial advisors. In that letter the Zochs wrote, "[a]t our most recent meeting with representatives of Ridgewood Energy, we were provided with information that reflects estimates of reserves and cash returns substantially lower than what has consistently been represented in the past." (Caldwell Declaration, Ex. G.) Defendants maintain that this letter put plaintiffs on inquiry notice of any alleged misrepresentations or omissions which induced them to invest in the Ridgewood Partnerships. (Mem. in Supp. of Mot. of Defs. Hall and Hall–Houston for Summ. J. at 21.) Defendants do not allege, however, that this letter gave plaintiffs notice that they had been injured by these misrepresentations or omissions.

Plaintiffs contend that the November 20, 1990 letter did not trigger the accrual of the statute of limitation because it did not inform them that they had been injured by defendants' conduct. Rather, it advised plaintiffs of a generalized downward revision in estimated profits and informed them that the Zochs would investigate these estimates further. At most, the letter put plaintiffs *en guard* and alerted them to an investigation into the possibility of an injury. Plaintiffs argue that because the letter did not put them on notice of an injury, the statute of limitations did not begin to accrue on November 20, 1990.

Plaintiffs claim that the earliest they could have known the above was when they received a February 6, 1991 letter from Ridgewood Energy and Swanson. (Pls.' Mem. in Opp. to Defs.' Motions for Summ. J. at 1.) That letter, plaintiffs argue, "provided the plaintiffs and the class for the first time with specific financial projections, as to each partnership, which were (1) not based exclusively on the Hall defendants' reserve estimates;

and (2) actually projected losses for certain partnerships." (Id. at 9.) Plaintiffs maintain that the letter itself "continued the defendants' pattern of fraud, designed to artificially inflate the value of investment prospects, by providing unsuspecting lay investors with *undiscounted* oil and gas reserve estimates." (Id.) Plaintiffs allege that it is undisputed that they and the class did not have "meaningful information" regarding the performance of their investments until February 6, 1991 and hence, they "could not possibly have discovered either the source, or the existence of their 'injuries' more than four years before their Complaint was filed." (Id. at 17.)

The Court finds that defendants have failed to demonstrate that the November 20, 1990 letter from the Zochs put plaintiffs on notice of all the factual elements of a RICO claim. In particular, the letter did not give plaintiffs knowledge of racketeering activity which caused them injury. Although the letter alerted plaintiffs to possible misrepresentations on the part of the defendants, it did not assert or imply that these misrepresentations were made with scienter or knowledge of their falsity. Scienter is an element of fraud, whether it be securities, mail, or wire fraud. There is no evidence in the record that plaintiffs knew or had any other reason to know at the time of the letter that defendants' alleged misrepresentations were made with knowledge of their falsity.

In addition, the letter did not notice plaintiffs that they had been injured by defendants' alleged misrepresentations. The letter addressed the partnerships generally, and not the specific partnerships in which plaintiffs had invested. Interestingly, it stated that "these revised estimates still reflect projected distributions which in most cases exceed the amounts invested." (Caldwell Declaration, Ex. G.) Plaintiffs were notified that there was a general downward revision of estimates which the Zochs would review further. Such notification does not constitute a notice of injury.

■ Defendants also argue that the Zochs knew that all of the elements of a RICO claim existed before January 27, 1991, and that the Zochs' knowledge should be imputed

to plaintiffs because they were plaintiffs' financial advisors. (Mem. in Supp. of Mot. of Defs. Hall and Hall–Houston for Summ. J. at 20–22; Mem. of Law in Supp. of Mot. for Summ. J. by Defs. Ridgewood Energy and Swanson at 33–39.) The Court finds no merit in this argument. Although the Zochs were plaintiffs' financial advisors, they were sales agents for Ridgewood Energy. (Pls.' Mem. of Law in Opp. to Defs.' Motions for Summ. J. at 30.) For agency purposes, the Zochs were the agents of Ridgewood Energy, not the plaintiffs. Thus, the knowledge of the Zochs cannot be imputed to the plaintiffs through agency principles. Moreover, even though the Zochs were members of the class of investors, the knowledge of one class member cannot be imputed to every other member of that class. Whether the Zochs knew that all of the elements of a RICO claim existed before January 27, 1991 is inapposite to whether plaintiffs possessed that knowledge. Because the evidence of defendants does not show that plaintiffs knew or should have known that all of the elements of a RICO claim existed before January 27, 1991, the Court finds that plaintiffs' complaint was filed within the statute of limitations for RICO.

### 2. Whether Securities Fraud May Constitute a Predicate Act for a RICO Violation

 Defendants Hall and Hall–Houston argue that plaintiffs have failed to allege proper predicate acts for a RICO claim because violations of the federal securities laws may no longer serve as predicate acts. (Mem. in Supp. of Mot. of Defs. Hall and Hall–Houston at 23.) Plaintiffs argue that this 1995 amendment to the RICO Act does not apply retroactively to actions pending before it was enacted. (Pls.' Mem. in Opp. to Defs.' Mot. for Summ. J. at 33.) The Court finds that the history of the Act supports plaintiffs' argument.

 The Private Securities Litigation Reform Act of 1995 amended the RICO Act to preclude a private cause of action based "upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962." 18 U.S.C. § 1964. The historical and statutory notes to the Act declare that the 1995 amendments "shall not affect or apply to any private action ... commenced before and pending on December 22, 1995." 18 U.S.C.A. § 1964. Because plaintiffs' action was "commenced" on January 27, 1995 and "pending" on December 22, 1995, the 1995 amendments do not apply to it. That plaintiffs' securities claims may be barred by the statute of limitations does not prevent a RICO claim predicated on acts of those barred claims; there is no authority for the proposition that predicate acts which are cognizable independent claims, substantively, but barred by the statute of limitations, cannot serve as predicate acts for RICO claim. *Halperin v. Jasper*, 723 F.Supp. 1091 (E.D.Pa.1989). Plaintiffs' allegation of a violation of the securities laws may serve as a predicate act for a RICO claim.

### 3. Whether Plaintiffs' Have Standing to Bring a RICO Claim

 Defendants argue that plaintiffs lack standing to bring a RICO cause of action because they suffered no injury to their business or property. According to defendants, plaintiffs merely suffered diminution of the value of their investments in the limited partnership. (Mem. in Supp. of Defs.' Hall and Hall–Houston's Mot. for Summ. J. at 26; Mem in Supp. of Mot. for Summ. J. by Defs. Ridgewood Energy and Swanson.) Defendants contend that if there was any injury suffered as a result of the Apache sale, it was by the Ridgewood Partnerships, not plaintiffs. Plaintiffs argue that because the partnerships were liquidated and dissolved shortly after the sale of assets to Apache, they suffered property loss, not merely a diminution of value. Plaintiffs maintain that if defendants' argument were correct then no one would have standing to sue in this case because the partnerships were liquidated and dissolved after the sale. (Pls.' Mem. in Opp. to Defs.' Mot. for Summ. J. at 37.) The Court finds that plaintiffs suffered more than mere diminution in the value of their investments. Because plaintiffs have alleged an injury to their business or property, they have standing to make a RICO claim.

### 4. Whether Summary Judgment Should be Granted on the Merits of the RICO Claim

As stated, to have a civil RICO cause of action, a plaintiff must allege the conducting of an enterprise through a pattern of racketeering activity which injured that person in his/her business or property. An enterprise, for purposes of the RICO Act, "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961. Plaintiffs charge that all the defendants form an enterprise for RICO purposes.

Plaintiffs assert that the defendants' racketeering activity included securities, mail, and wire fraud, based on material misrepresentations and omissions. These alleged material misrepresentations are the core of all the plaintiffs' federal and state law claims. Because the Court finds genuine issues of material fact exist as to whether defendants misrepresented or omitted material information, the Court denies plaintiffs' and defendants' motions for summary judgment on the RICO claim.

Plaintiffs allege that the RICO enterprise began with the formation and sale of interests in the Pipeline II Partnership and the 1986 Drilling and Completion Partnerships. They allege that defendants Hall and Hall–Houston were responsible for the geological and economic analysis for each of the Drilling and Completion partnerships, which was in the Offering Materials. (Mem. in Supp. of Pls.' Mot. for Summ. J. at 6). These geological and economic analyses included a specific description of the drilling prospects to be acquired by each partnership, a summary of projected expenses for proposed drilling and completion activities, and an analysis of the oil and gas reserves the prospect could be expected to produce. (Id.) According to plaintiffs, whenever defendants Hall and Hall–Houston were experiencing "cash flow problems" they, together with the Ridgewood Energy defendants sold additional limited partnership interests to the plaintiffs and the class. (Id. at 6–7). Plaintiffs assert that while Swanson and Ridgewood Energy were primarily responsible for the marketing and sale of limited partnership interests to the plaintiffs and the class, Hall and Hall–Houston were also directly involved in marketing activities. (Id. at 8.)

Plaintiffs claim that defendants materially misrepresented the nature and extent of the oil reserves in the geological summaries they prepared. (Id. at 11.) Specifically, plaintiffs contend that defendants referred to some as "proved reserves" when in reality they did not merit that classification. They argue that this use of the term "proved reserves" did not comply with the SEC definition of the term. (Id.)

Defendants Hall and Hall–Houston answer that they did not prepare or review material to be included in the offering materials. They argue that the "offering materials were prepared exclusively by the Ridgewood Defendants." (Id. at 7.) Hall–Houston claims that it provided Swanson and Ridgewood Energy with their own internal prospect summaries but that it "never reviewed or had any control over the form in which that information was presented by Ridgewood to its investors." (Id. at 8.) Moreover, Hall and Hall–Houston maintain that their use of the term "proved reserves" in the prospect summaries given to Swanson and Ridgewood Energy was entirely proper. They assert that "as to the prospects identified as having 'proved' reserves, subsequent production history indicates that Hall–Houston's proved reserve estimates have been or may yet be equaled or exceeded." (Response of Defs.' Hall and Hall–Houston to Pls.' Mot. for Summ. J. at 9.)

Because both the plaintiffs and defendants have provided evidentiary support for their contentions, the Court cannot, as a matter of law, decide if defendants made the alleged material misrepresentations. Issues of material fact abound as to whether defendants misrepresented or omitted pertinent information. Both defendants' and plaintiffs' motions for summary judgment as to the RICO claims are denied.

### C. Plaintiffs Claims under the Securities Exchange Act of 1934

#### 1. Section 10–b and Rule 10b–5

In their second claim, plaintiffs allege that defendants Swanson, Hall, and Ridge-

wood Energy violated § 10–b of the Securities Exchange Act of 1934. Plaintiffs admit that their federal securities fraud claims relating to the original purchase of Ridgewood Energy limited partnership interests are proscribed by the statute of limitations. Plaintiffs root their securities fraud action in defendants' sale of assets to Apache Corporation in June, 1994. They claim that defendants made untrue statements of material facts and failed to state material facts in order to induce plaintiffs to sell their limited partnership interests far below the true market value of those interests. (Compl.¶ 55.) Plaintiffs argue that defendants "course of conduct ... operated as a fraud or deceit upon the investors in the limited partnerships, in connection with the solicitation of their consent to the bulk sale of the assets of their Ridgewood partnership interests." (Compl.¶ 57.)

Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), prohibits the use of fraudulent schemes or devices in connection with the purchase or sale of securities. This section of the Act makes it unlawful to "employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention" of any rule promulgated by the SEC designed to protect the investing public. To implement the statute, the Commission enacted Rule 10b–5, violation of which gives rise to a private cause of action. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), *rehearing denied,* 425 U.S. 986, 96 S.Ct. 2194, 48 L.Ed.2d 811 (1976); *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), *rehearing denied,* 423 U.S. 884, 96 S.Ct. 157, 46 L.Ed.2d 114 (1975). That Rule, in turn, makes it unlawful: (1) "To employ any device, scheme, or artifice to defraud," (2) "[t]o make any untrue statement of a material fact" or to omit to state a material fact so that the statements made "in light of the circumstances," are misleading, and (3) "[t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." 17 C.F.R. § 240.

This alleged tort, although statutory in nature, sounds in the common law of fraud and deceit and retains, in modified form, the common law elements of duty, breach, causation, and damage. *See Huddleston v. Herman & MacLean,* 640 F.2d 534, 547 (5th Cir.1981) (10b–5 claim derived from common law action for deceit), *modified on other grounds,* 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). The plaintiff must prove knowledge by the defendant, intent to defraud, misrepresentation or failure to disclose, materiality of the information and, injurious reliance by the plaintiff. *Thomas v. Duralite Co.,* 524 F.2d 577 (3d Cir.1975); *Rochez Bros., Inc. v. Rhoades,* 491 F.2d 402 (3d Cir.), *cert. denied,* 425 U.S. 993, 96 S.Ct. 2205, 48 L.Ed.2d 817 (1976). More precisely, these elements form the following test. In order to make a claim under 10b–5, a plaintiff must allege (1) a misstatement or an omission (2) of a material fact (3) made with scienter by a defendant (4) upon which plaintiff relied (5) that proximately caused his injury. *Huddleston,* 640 F.2d at 543.

Defendants argue that plaintiffs have no standing under Rule 10b–5 or § 10(b) of the Securities Exchange Act of 1934 to challenge the 1994 sale of assets to Apache because it was not a purchase or sale of securities. (Mem. in Supp. of Mot. of Defs. Hall and Hall–Houston at 27–28) (Mem. in Supp. of Mot. for Summ. J. by Defs. Ridgewood and Swanson at 20–21.) Instead, the Apache sale was a sale of assets. Plaintiffs reply that they do have standing to sue because the partnerships were liquidated and dissolved after the sale, amounting to a "forced sale" where they, as investors in the partnerships, should be treated as sellers of securities. (Pls.' Mem. in Opp. to Defs.' Mot. for Summ. J. at 37.) To support this theory, plaintiffs rely on *Vine v. Beneficial Fin. Co.,* 374 F.2d 627 (2d Cir.1967), *cert. denied,* 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967)(holding that a plaintiff who was forced to sell shares after a short form merger had standing to bring a § 10(b) claim). Next, they refer to a line of cases that confer standing on an investor to bring a 10b–5 action when the assets of a corporation or a limited partnership have been sold leaving the investor with only the right to receive a cash distribution. (Pls.'

Mem. in Opp. to Defs.' Mot. for Summ. J. at 38.)

Defendants maintain that the "forced seller" theory referred to by plaintiffs is inapplicable to limited partnerships. Moreover, they argue that plaintiffs were not forced sellers; plaintiffs voted on and approved the sale of assets to Apache. (Reply Mem. in Supp. of Mot. for S.J. of Defs. Ridgewood and Swanson at 12.) Defendants' arguments have merit.

■ Only a seller or purchaser of a security may bring an action under either § 10(b) of the Securities Exchange Act of 1934 or Rule 10b–5. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539. Plaintiffs aver that they are forced sellers and have standing to bring such an action. However, the "forced seller" concept has been criticized and recently described as defunct. *See Isquith v. Caremark Int'l, Inc.,* 136 F.3d 531, 535–37 (7th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 274, 142 L.Ed.2d 226 (1998) (expressing criticism of the "defunct forced-seller doctrine" and the Court of Appeals' decision in *Vine*) (Posner, J.). To the extent that the doctrine is still alive, it is not applicable here, where there is no evidence of "force" to the sale.

■ "The forced seller doctrine generally encompasses only those situations where the fundamental nature of a plaintiff's investment has been changed without an actual sale through circumstances beyond the plaintiff's control." *Federal Deposit Ins. Corp. v. Kerr,* 637 F.Supp. 828, 836 (W.D.N.C.1986) (citing *Crane Co. v. Westinghouse Air Brake Co.,* 419 F.2d 787 (2d Cir.1969); *Vine,* 374 F.2d 627; *Coffee v. Permian Corp.,* 434 F.2d 383 (5th Cir.1970), *cert. denied,* 412 U.S. 920, 93 S.Ct. 2736 (1973)). The cases to which plaintiffs refer involve circumstances where the investors were compelled against their will to sell assets or liquidate a corporation. *See Coffee,* 434 F.2d 383; *Dudley v. Southeastern Factor and Fin. Corp.,* 446 F.2d 303, 307 (5th Cir.), *cert. denied,* 404 U.S. 858, 92 S.Ct. 109, 30 L.Ed.2d 101 (1971); *Arnold v. Moran,* 687 F.Supp. 232 (E.D.Va.1988); *Federal Deposit Ins. Corp.,* 637 F.Supp. 828; *Jacobson v. AEG Capital Corp.,* 50 F.3d 1493

(9th Cir.1995); *Alpex Computer Corp. v. Pitney Bowes, Inc.,* 417 F.Supp. 328 (S.D.N.Y. 1976). And, none of these cases applied the doctrine of the forced seller to limited partnerships. Here, that rule is inappropriate because plaintiffs were not forced sellers. Because they were not purchasers or sellers of securities, they have no standing to bring an action pursuant to either § 10(b) of the Securities Exchange Act or Rule 10b–5. These claims are dismissed.

### 2. Section 20(a)

Plaintiffs also argue that defendants Hall and Swanson violated § 20(a) of the Securities Exchange Act of 1934. They claim that Hall and Swanson each "possessed the power to direct or cause the direction of the management and policies of Ridgewood and Hall–Houston" and "provide[d] substantial assistance to Ridgewood and Hall–Houston in the above-referenced violations of Section 10(b) of the Exchange Act, and Rule 10b–5."(Compl.¶ 60.)

■ Section 20(a) creates liability for "controlling persons" in a corporation, 15 U.S.C. § 78t(a), and imposes joint and several liability upon anyone who "controls a person liable under any provision of" the Securities Exchange Act of 1934. To maintain a claim under § 20(a), the plaintiffs must establish (1) an underlying violation by a controlled person or entity, (2) that the defendants are controlling persons, and that they were "in some meaningful sense culpable participants in the fraud perpetrated by controlled persons." *Rochez Brothers, Inc. v. Rhoades,* 527 F.2d 880, 885 (3d Cir.1975) (citation omitted).

■ Plaintiffs charge that defendants Swanson and Hall were controlling persons of Ridgewood Energy and Hall–Houston respectively because they exercised their power to "provide substantial assistance to Ridgewood and Hall–Houston" in the violations of § 10(b) of the Securities Exchange Act and Rule 10b–5. However, plaintiffs cannot maintain an action against Swanson and Hall pursuant to § 20(a) because they, the plaintiffs, as the Court has determined, lack standing to establish an underlying vio-

lation of the securities laws by Ridgewood Energy or Hall–Houston. Plaintiffs claims under § 20(a) of the Securities Exchange Act are dismissed.

## D. State Law Claims

Defendants Swanson and Ridgewood Energy do not allege that plaintiffs' state law claims of fraud, breach of fiduciary duty, and negligent misrepresentation are without merit. Rather, they argue that because the federal RICO and securities law claims of plaintiffs should be dismissed, and subject matter jurisdiction in this case is based solely on federal question jurisdiction, the state law claims should be dismissed for lack of subject matter jurisdiction. (Mem. in Supp. of Mot. for Summ. J. by Defs. Ridgewood and Swanson at 48.) Because plaintiffs' RICO claims were not dismissed, the Court retains pendant jurisdiction over the state law claims of plaintiffs.

### 1. Fraud and Deceit

■ Plaintiffs' fourth claim complains of fraud and deceit by all defendants. Plaintiffs blame defendants for having fraudulently induced them to purchase limited partnership interests at prices far above their true market value and later to sell those same interests at prices far below true market value. (Compl.¶ 64.) They allege that defendants accomplished such inducement through false, misleading, and deceitful misrepresentations and omissions. (Compl.¶ 69.) To prevail on a claim of common law fraud, plaintiffs must prove: (1) a material representation of a past or present fact; (2) knowledge by the defendant of its falsity; (3) intention that it be relied upon; (4) their own reasonable reliance on it; with (5) resulting damages. *Gross v. Johnson & Johnson–Merck Consumer Pharm. Co.*, 303 N.J.Super. 336, 344, 696 A.2d 793 (1997); *see Jewish Center of Sussex County v. Whale*, 86 N.J. 619, 432 A.2d 521 (1981).

■ Defendants Hall and Hall–Houston argue that all of plaintiffs state and federal claims arise from allegations of fraud, and plaintiffs have not and cannot demonstrate that Hall and Hall–Houston made any material misrepresentations of fact. Plaintiffs

charge that Hall and Hall–Houston provided Ridgewood Energy and Swanson with materially misleading information of reserve estimates upon which plaintiffs relied to their detriment. Hall and Hall–Houston rejoin that those reserve estimates were not representations or misrepresentations, rather, "non-actionable opinions or predictions," forward-looking statements "which are only actionable if they are made without reasonable belief or have no basis." (Mem. in Supp. of Mot. of Defs. Hall and Hall–Houston for Summ. J. at 31–32.) From these contentions, issues of material fact arise as to whether defendants misrepresented material information. Defendants' Hall and Hall–Houston's motion for summary judgment on the fraud claim is denied.

### 2. Breach of Fiduciary Duty

■ In their fifth claim, plaintiffs allege that defendants Swanson, Hall, and Ridgewood Energy breached their fiduciary duty to plaintiffs with the sale of the Ridgewood Partnerships' assets to Apache "despite their knowledge that this transaction would most likely fail to maximize the value of the limited partnerships, and fail to protect the investments of the limited partnership investors." (Compl.¶ 72.) They also claim that defendants breached their fiduciary duties when they agreed to a sale which required the plaintiffs' consent to the sale of the assets of all the Ridgewood Partnerships in order to complete the sale of the assets of any one of the Partnerships. (Compl.¶ 72.) Finally, plaintiffs argue that Swanson, Hall, and Ridgewood Energy breached their fiduciary duties because they "knew that their actions involved improper self-dealing and other acts in derogation of the fiduciary duties owed by them, as general partners of the limited partnerships, or as the controlling person of a general partner." (Compl.¶ 74.)

Defendant Hall claims that he owed no fiduciary duty to the plaintiffs in the Ridgewood Partnership's sale of assets to Apache: at the time the assets were sold, he was not an officer, director, or shareholder of Ridgewood Energy and Hall–Houston was not the operator of any of the wells. The Apache sale took place in 1994, and Hall was a

director of Ridgewood Energy only until May 1989. (Hall Aff. ¶ 2, Miller Aff. Ex. 19; Swanson Dep. at 68–69, Miller Aff. Ex. 9.) Neither Hall nor Hall–Houston owned any interest in, nor served as operator of, any of the properties sold by Ridgewood Energy to Apache in 1994 because their interests in those properties had been conveyed to Apache in 1993. (Thomas Aff. ¶ 3, Miller Aff. Ex. 18; Hall Aff. ¶ 7, Miller Aff. Ex. 19.) At that time, they had also ceased to operate those properties. (Thomas Aff. ¶ 3, Miller Aff. Ex. 18; Hall Aff. ¶ 7, Miller Aff. Ex. 19.) Additionally, defendants Hall and Hall–Houston allege that neither was involved in any way in the decision to sell Ridgewood Partnership assets to Apache or in the sale itself. (Harris Dep. at 15, Miller Aff. Ex.7; Bauer Dep. at 21–22, Miller Aff. Ex. 6; Solich Dep. at 111, Miller Aff. Ex. 5; Hall Aff. ¶ 10, Miller Aff. Ex. 19.) Accordingly, Hall maintains that he owed no fiduciary duty to plaintiffs with regard to the Apache sale.

Yet, plaintiffs insist that because Hall induced them to participate in the Ridgewood Partnerships, he owes them a fiduciary duty. And even though he abandoned that business relationship, he breached that fiduciary duty. (Pls.' Mem. in Opp. to Defs.' Mot. for Summ. J. at 42.) Assuming that Hall induced plaintiffs to participate in the Ridgewood Partnerships and later "abandoned" that relationship, it does not follow that he owes them a fiduciary duty apropos the Apache sale. Plaintiffs' only support for this theory of fiduciary duty is found in *Amendola v. Bayer*, 907 F.2d 760 (7th Cir.1990), which addressed whether a promoter of a proposed leveraged buyout had a fiduciary duty to a participant which could be breached when the promoter abandoned the leveraged buyout. Although the Court ruled that the promoter in that case had no fiduciary duty, it opined that a promoter could owe a fiduciary duty to a participant if there is a showing that the promoter gained influence or superiority over that participant by acquiring his/ her trust or confidence. *Amendola*, 907 F.2d at 763–764. This case is inapposite for several reasons. First, plaintiffs have not alleged that Hall was a promoter. Second, the question is whether Hall owed plaintiffs a fiduciary duty which he breached with regard to the Apache sale, not whether Hall breached a fiduciary duty by "abandoning" the Ridgewood Partnerships.

Because Hall–Houston and Hall were joint venturers with the Ridgewood Partnerships, plaintiffs claim, as a joint venturer, Hall owed them a fiduciary duty. (Pls.' Mem. in Opp. to Defs.' Mot. for Summ. J. at 43.) Hall answers that he and Hall–Houston were not involved in a joint venture or a partnership with the Ridgewood Partnerships. Rather, they were parties to joint operating agreements with the Ridgewood Partnerships which expressly provided that such did not create a joint venture or partnership. (Reply Mem. of Defs. Hall and Hall–Houston in Supp. of Defs.' Mot. for Summ. J. at 14; Thomas Supp. Aff.)

"The sine qua non of a joint venture is a contract, express or implied; that is, an actual agreement between the parties." *Hellenic Lines, Ltd. v. Commodities Bagging & Shipping, Process Supply Co.*, 611 F.Supp. 665, 679 (D.N.J.1985). Here, the parties expressly agreed not to become joint venturers or partners. This Court will not create a joint venture between the parties which they did not intend to create for themselves.

Finally, plaintiffs argue, that Hall resigned as a director of Ridgewood Energy in 1989 does not relieve him of liability for all acts occurring after that date. (Pls. Mem. in Opp. to Defs.' Mot. for Summ. J. at 45.) Here, plaintiffs' theory is that Hall was a co-conspirator in a RICO conspiracy with Ridgewood Energy and as a co-conspirator he is liable for all acts of the conspiracy even after he withdrew from it. (Id.) Whether Hall was a co-conspirator with Ridgewood Energy is irrelevant to the question of whether he owed plaintiffs a fiduciary duty in the Apache sale.

The Court finds that Hall owed no fiduciary duty to plaintiffs with regard to the Apache sale. Hall was not a shareholder, officer, director, partner, or joint venturer of the Ridgewood Partnerships in 1994 at the time of the Apache sale. He had no involvement with the sale or the decision to make the sale. Nor was Hall in a fiduciary relationship with plaintiffs at the time of the

Apache sale. The Court grants Hall and Hall–Houston's motion for summary judgment to dismiss the claim of breach of fiduciary duty as to defendant Hall.

### 3. Negligent Misrepresentation

Plaintiffs' sixth claim alleges that defendants were negligent in misrepresenting and omitting material facts in the "Offering Materials utilized to effectuate the sale of Ridgewood Partnership interests to plaintiffs, and the plaintiff class, and the materials utilized to induce plaintiffs, and the plaintiff class to consent to the sale of all, or substantially all of the assets of the Ridgewood Partnerships...." (Compl. ¶ 79.) To redress the injuries plaintiffs have allegedly suffered, plaintiffs ask this Court to impose a constructive trust upon all the proceeds of the limited partnerships, to award compensatory damages in the amount of $50,000,000, and to award punitive damages.

 A charge of negligent misrepresentation requires proof that an "incorrect statement was negligently made and justifiably relied upon" and injury sustained as a consequence of that reliance. *Gross,* 303 N.J.Super. at 344, 696 A.2d 793. As previously found, there are material issues of fact as to whether defendants made incorrect statements, negligently or otherwise. Consequently, the motion of defendants Hall and Hall–Houston for summary judgment on the claim for negligent misrepresentation is denied.

### E. Defendants' Motion to Limit the Class

Defendants move to limit the class to exclude plaintiffs who were involved in earlier settlements with defendants. Specifically, defendants Hall and Hall–Houston ask the Court to exclude those members of the class who were plaintiffs in the *Kress, et al. v. Hall–Houston Oil Co. and Gary L. Hall* case, Civ. No. 92–543 ("Kress Action"), filed in February, 1992 and dismissed with prejudice by this Court on September 19, 1995. Defendants argue that plaintiffs in that action released and dismissed with prejudice all claims related to the limited partnerships at issue against Hall–Houston and Hall. All defendants move to exclude the Wineberg plaintiffs, a group of individual investors who did not previously commence an action but entered into a settlement agreement which released all named defendants from liability arising out of the Ridgewood Partnerships. Defendants maintain that the claims by the Kress and Wineberg plaintiffs are barred by res judicata, claim preclusion, or by the entire controversy doctrine.

Plaintiffs respond that the "Kress plaintiffs" and the "Wineberg plaintiffs" are not parties to this suit; rather, they are merely absent class members. They claim that the Kress plaintiffs and the Wineberg plaintiffs "are not presently before the Court, except to the extent that they may be members of a class for whose benefit the plaintiffs brought this action." (Pls.' Mem. of Law in Opp. to Defs.' Mot. to Limit the Class at 2.) Moreover, they contend that the releases executed by the Wineberg plaintiffs, "if valid, would affect some, but not all, of the claims asserted in the instant action and do not purport to release either Swanson or [Ridgewood Energy]." (Pls.' Mem. of Law in Opp. to Defs.' Mot. to Limit the Class at 2–3.) Specifically, plaintiffs aver that the releases have no bearing on the Apache sale. Finally, they assert that because the Wineberg and Kress plaintiffs are not active parties to the instant suit, to permit the defendant to exclude them would be unjust. Plaintiffs contend that "there is no way for this Court to determine whether the defendants' claimed releases are forgeries, void for failure of consideration, unenforceable to the extent that they purport to release injuries unknown to the releasors at the time that the release was executed, or subject to some other defense personal to one or more of the absent class members whom defendants assert have released their claims." (Pls.' Mem. of Law in Opp. to Defs.' Mot. to Limit the Class at 4.) Plaintiffs argue that the appropriate time for defendants to challenge an absent class member's claim is when that class member submits a proof of claim or attempts to assert the claim.

### 1. The Kress Action

 Defendants claim that the complaint in this action is virtually identical to the amended complaint in the Kress action.

They maintain that the only difference is that the present complaint includes claims related to the sale of assets of the limited partnerships to Apache, common law claims of breach of fiduciary duty, and a request for the imposition of a constructive trust. The common law claims of breach of fiduciary duty and the request for an imposition of a constructive trust arise out of the same allegations of fraud present in the Kress complaint.

Hall and Hall–Houston argue that the Kress plaintiffs executed releases, after the commencement of the current action, which released them from:

> any and all claims, demands, and causes of action, known and unknown, of any kind or character, that the investors, individually and/or collectively, now have, claim to have, or have had at any time in the past up to the date of this Release, arising from or relating to the offer and sale of the Partnerships' units, the drilling and exploration of the Partnerships' properties, or otherwise in connection with the Partnerships or their properties or any matter asserted or that could have been asserted in the Kress action. (Miller Aff., Ex. C.)

The releases also recited that the plaintiffs would not "commence another action or voluntarily assist or participate in another action" against Hall or Hall–Houston "pertaining to any claim, demand or cause of action . . . arising from or relating to the Partnerships or any of them or their properties or any matter that is the subject of this release." (Id.) Defendants argue that the Kress plaintiffs entered into these releases approximately nine months after the complaint in this suit was filed and well after all the events giving rise to the claims in this case, including the Apache sale, had taken place.

Also, the claims of the Kress plaintiffs are barred by res judicata, claim preclusion, because "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Res judicata will bar an action if (1) a judgment has been entered, (2) the parties are the same or in privity, and (3) the claims in the second action arise out of the same transaction or occurrence. *Sibert v. Phelan*, 901 F.Supp. 183, 186 (D.N.J.1995). For res judicata purposes, two causes of action are the same if (1) the wrong for which redress is sought is the same in both actions, (2) the theory of recovery is the same, (3) the witnesses and documents necessary at trial are the same, and (4) the material facts alleged are the same. *Rodziewicz v. Beyer*, 809 F.Supp. 1164, 1167 (D.N.J.1992); *Wheeler v. Nieves*, 762 F.Supp. 617, 624 (D.N.J.1991). This is the argument of defendants.

Here, a final judgment has been entered and the parties are the same. Defendants assert that the claims in this action arise out of the same transaction or occurrence as those in the Kress action because both sets of claims involve the plaintiffs' investments in the Ridgewood limited partnerships, both have theories of recovery based on fraud, the witnesses and documents are the same, and the material facts are identical.

Moreover, defendants argue that the Kress plaintiffs' present claims are barred by the entire controversy doctrine. Under the entire controversy doctrine, parties must litigate all aspects of a controversy against each other in a single action. *Melikian v. Corradetti*, 791 F.2d 274, 279 (3d Cir.), *cert. denied*, 498 U.S. 821, 111 S.Ct. 69, 112 L.Ed.2d 43 (1990), *and rehearing denied*, 498 U.S. 1017, 111 S.Ct. 594, 112 L.Ed.2d 598 (1990). Pursuant to this doctrine, the Kress plaintiffs should have brought all claims related to their investment in the Ridgewood Partnerships, including the Apache sale, in one suit.

The Court finds that the releases executed by the Kress plaintiffs preclude those plaintiffs from relitigating the same claims involved in their earlier suit against defendants Hall and Hall–Houston and from raising any claims which could have been asserted in that action. These include all securities, RICO, fraud, and negligent misrepresentation claims arising out of the sale to the investors of interests in the limited partnerships and all claims related to the Apache sale. The entire controversy doctrine also prevents the Kress plaintiffs from asserting claims against

Hall and Hall–Houston about the Apache transaction which occurred before the plaintiffs executed these releases. Yet, because the Kress plaintiffs did not release defendants Swanson and Ridgewood Energy, they are not precluded from asserting any claims they may have against those defendants.

### 2. The Wineberg Plaintiffs

■ Defendants further contend that the releases executed by the Kress plaintiffs and the settlement agreement between the Wineberg plaintiffs and all defendants constituted an accord and satisfaction. The Wineberg plaintiffs entered into a settlement agreement with all defendants in February and March of 1991 which released all defendants from liability arising out of their investments in the Ridgewood Partnerships among others. In that agreement, the Wineberg plaintiffs agreed not to:

asdsert any claim or right to relief, commence any action or proceeding or voluntarily assist others in any way whatsoever in asserting any claim or right to relief or commencing any action or proceeding, or voluntarily participate in any action or proceeding commenced by others, against any Releasee [Swanson, Ridgewood Energy, Hall, Hall–Houston] pertaining to any claim.... (Miller Aff., Ex. G.)

The agreement defined "claim" as:

any claim, demand, cause of action, debt, liability or obligation, known or unknown, in law or equity, of any kind or character, against any Releasee, that arises from or relates to (I) the Ridgewood Partnerships, Ridgewood, Reidgewood Securities Corporation or Ridgewood Energy 1990–I Lease Holding Corporation, (ii) the offer or sale of any partnership interest in any Ridgewood Partnership, (iii) the management, operation or finances of any Ridgewood Partnership, or (iv) otherwise. (Id.)

Defendants argue that this settlement agreement constituted both an accord and satisfaction and a release.

■ "An accord and satisfaction is an agreement which, upon its execution, completely terminates a party's existing rights and constitutes a defense to any action to enforce pre-existing claims." *Nevets C.M.,*

*Inc. v. Nissho Iwai American Corp.,* 726 F.Supp. 525, 536 (D.N.J.1989), *aff'd sub nom. Appeal of Nevets C.M. Inc.,* 899 F.2d 1218 (3d Cir.1990). The elements of an accord and satisfaction are: (1) a bona fide dispute as to the amount owed; (2) a clear manifestation of intent by the debtor to the creditor that payment is in satisfaction of the disputed amount; and (3) an acceptance of satisfaction by the creditor. *Nevets C.M., Inc.,* 726 F.Supp. at 536. It is undisputed that there was a bona fide dispute between the Wineberg Plaintiffs and defendants. The Wineberg Plaintiffs alleged that the defendants made certain misrepresentations and breached their fiduciary duties. The defendants denied any liability to the Wineberg Plaintiffs from the partnerships.

Defendants assert that the settlement agreement demonstrates their intent that the payment to the Wineberg Plaintiffs was in satisfaction of the bona fide dispute. They agreed to make certain payments to the Wineberg Plaintiffs and the plaintiffs, in turn, agreed to release and discharge them from any claim. Thus, the payment made by the defendants was in satisfaction of the disputed amount, and the plaintiffs accepted this satisfaction.

The Court finds that the Wineberg Plaintiffs released all defendants from any claims related to the sale to them of interests in the limited partnerships. Because the Wineberg Plaintiffs executed the settlement agreement before the Apache transaction, they did not surrender their rights to challenge it. It follows then that the Wineberg plaintiffs are precluded from asserting claims with regard to the sale of their interests in the limited partnerships except those with regard to the Apache sale.

### III. Conclusion

For the foregoing reasons, plaintiffs' motion for partial summary judgment with regard to the RICO claims is denied. Defendants' motions for summary judgment to dismiss the securities claims are granted. Defendants' motions for summary judgment to dismiss the RICO claims are denied. Defendants Swanson and Ridgewood Energy's

184

motion for summary judgment to dismiss the state law claims is denied. Defendants Hall and Hall–Houston's motion for summary judgment to dismiss the breach of fiduciary duty claim is granted. Defendants Hall and Hall–Houston's motion for summary judgment to dismiss the common law fraud and negligent misrepresentation claims is denied. Defendants' motion to limit the class is granted in part and denied in part.

SO ORDERED.

## ORDER

This matter comes before the Court on the motion of defendants Hall–Houston Oil Co. ("Hall–Houston") and Gary L. Hall ("Hall") for summary judgment to dismiss the complaint, the motion of defendants Hall–Houston and Hall to limit the class and to dismiss the claims of the settling plaintiffs, the motion of defendants Robert E. Swanson and Ridgewood Energy Corp. for summary judgment to dismiss all claims, and the motion of plaintiffs Bartosh, Maehr, and Gunter for summary judgment on the RICO claims. Upon consideration of the submissions of the parties, oral argument, and for the reasons stated in the accompanying opinion, it is on December, 1998:

ORDERED that the motion of defendants Hall–Houston and Hall to limit the class is granted in part and denied in part;

ORDERED that the motions of all defendants for summary judgment to dismiss the securities claims are granted;

ORDERED that the motions of all defendants for summary judgment to dismiss the RICO claims are denied;

ORDERED that the motion of defendants Swanson and Ridgewood Energy for summary judgment to dismiss the state law claims is denied;

ORDERED that the motion of defendants Hall and Hall–Houston for summary judgment to dismiss the breach of fiduciary duty claim is granted;

ORDERED that the motion of defendants Hall and Hall–Houston summary judgment to dismiss the common law fraud and negligent misrepresentation claims is denied;

ORDERED that the motion of plaintiffs Gunter, Maehr, and Bartosh for partial summary judgment on the RICO claims is denied.